**Tamara Wahl GREEN et al.,
Plaintiffs,**

v.

**COUNTY PLANNING AND ZONING COMMISSION OF SUSSEX COUNTY et al.,
Defendants.**

Court of Chancery of Delaware,
Sussex.

Jan. 18, 1974.

Melvin I. Monzack, of Walsh & Monzack, Wilmington, William S. Green of Bethesda, Md., and J. Peter Luedtke of Washington, D. C., for plaintiffs.

Jackson R. Dunlap, Jr., Georgetown, for defendants County Planning and Zoning Commission of Sussex County and County Council of Sussex County.

Robert W. Tunnell and Michael Joseph Rich, of Tunnell & Raysor, Georgetown, for defendant Sea Colony, Inc.

MARVEL, Vice Chancellor:

The complaint herein, as amended, was filed by owners of interests in certain parcels of land situate in Baltimore Hundred, Sussex County. On these parcels are located single family beach residences situate near the large tract here in issue which is owned by the defendant Sea Colony, Inc. Joined as plaintiffs are two nonprofit corporate associations which are concerned with the protection of the alleged rights and interests of the present residents of the area, including those of plaintiffs.

Plaintiffs seek the entry of a declaratory judgment in the form of a permanent injunction against the carrying into effect of governmental action taken by the defendants County Planning and Zoning Commission of Sussex County and County Council of Sussex County which culminated in the purported rezoning of the tract owned by the defendant Sea Colony, Inc. here in issue. As a result of such rezoning the defendant Sea Colony is at least tentatively authorized to build high density high rise (HR) residential facilities in what has been until now an area of medium density single family dwellings (MR).

The parties have entered into a stipulation of agreement on what they deem to be the relevant and material facts involved in this controversy, and this is the opinion of the Court on the opposing parties' oral motions for final judgment.

As noted above, the defendant Sea Colony is the owner of lands located in close proximity to those of plaintiffs, its tract of land here in issue containing some twenty-three acres, which extend from Route 14 on the west to the Atlantic Ocean on the east. The developed community nearest to the

Sea Colony tract is Cotton Patch Hills on the north, while the development nearest to such Sea Colony tract to the south is Ocean Village.

According to the stipulated facts on which the opposing parties' motions for judgment are based there are at the present time no high rise buildings between Bethany Beach, which is south of the area here in issue, and Indian River Inlet to the north. Of the approximately twenty-five miles of Delware ocean coastline, fifteen are owned by the State. Of the remaining ten miles, only two miles of coastline remain for development. There is apparently a demand for condominiums in the coastal area, of which the tract in issue is a part, however, there is evidence of speculative dealing in such type of ownership, some 12% of recent purchases of such type of residential structure having been almost immediately resold. It is stipulated that had the individual plaintiffs been called to testify, they would have testified that in the event that the construction of the high rise buildings which Sea Colony proposes to erect is not enjoined, plaintiffs' adjoining properties will lose both material and esthetic value. The factors which lead to such conclusion are apparently concerned with the afternoon shadows which would be cast by the high rise buildings in question were they to be erected, the crowding of the beach resulting from increased population in the area of such buildings, the resulting traffic congestion, as well as the water and sewage problems which would ensue as a result of such erections. Other well recognized disadvantages which accompany high density living are also stressed by plaintiffs.

Pursuant to the provisions of title 9 Del. C. § 6802, which became effective on July 13, 1967, a governmental body for Sussex County was created [1] known as the County

---

1. Its purposes were stated to be as follows: "For the purpose of promoting the health, safety, prosperity and general welfare, as well as for the purpose of securing coordinated plans for land use, transportation, public facilities and utilities and public work

Planning and Zoning Commission[2] of Sussex County, charged with the duty, inter alia, of preparing a Comprehensive Development Plan[3] for Sussex County as well as for making recommendations concerning applications for amendments to a proposed zoning map of Sussex County, promulgated such a plan for such county in which the area in which the plot of twenty-three acres here in issue is located was classified as land appropriate for medium density single family residential use. However, notwithstanding such designation, a zoning change has been granted the defendant Sea Colony, Inc. by the defendant County Council for the tract here in issue, after approval of such change by the Planning and Zoning Commission of Sussex County, namely a change from medium density single family residential (MR) use to multi-family residential (HR) use, the lowest category for residential zoning. Such rezoning action was approved by the Planning and Zoning Commission on June 22, 1972 after a public hearing held on June 8, 1972, which action was upheld by the County Council on June 27, 1972, again after a public hearing. If the relief sought by plaintiffs is denied, the defendant Sea Colony will apparently be free to build high density housing of up to thirty units per acre to a height of one hundred sixty-five feet, whereas the former zoning for such area permitted only four units per acre of a height of not more than thirty-five feet.

Plaintiffs now contend that such zoning change must be declared to be illegal and void for a number of reasons and thereupon enjoined from being effectuated, it being argued that were the zoning change which has been effected to become a reality, such change would drastically and improperly alter the character of the beach area in which plaintiffs own property and pay taxes by permitting the construction of residential buildings of a height of up to sixteen stories in close proximity to the single family residential homes in which plaintiffs and others reside. Plaintiffs further complain that unless the proposed high rise apartment-type buildings, which the defendant Sea Colony is now free to construct, are enjoined, they will rise above the relatively flat beach area in which plaintiffs' properties are situate, and will destroy the present cottage character of the area by blocking views, putting the adjacent beaches in shadow in the afternoon and create an overcrowding of adjacent beaches, an overloading of roads and sewer facilities in the vicinity of the proposed construction, and bring about an increase in local taxes, thereby damaging plaintiffs' property interests in what to date has been, according to plaintiffs, essentially a single family residential community.

In opposing plaintiffs' application for injunctive relief, counsel for the defendant Sea Colony, Inc. contend that this Court's inquiry into the governmental action of which plaintiffs complain must be limited

expenditures in that portion of Sussex County which is not included within the corporate limits of any city or town, unless any territory within such corporate limits is included upon request made by the governing body or authority of any such city or town and as well as for the purpose of preventing the unnecessary duplication of facilities or utilities * * *" 9 Del.C. § 6802.

2. In a brochure published in February, 1970 by the Commission one of the objectives of the Commission was stated to be as follows:
"Tidal bay and ocean front development should be carefully regulated and limited. The shoreline is a major natural resource of Sussex County and should be used wisely

for the maximum long-term benefit of the people. The potential profit from real estate transactions and land development here is creating intensive pressure upon this limited, rather fragile nature resource. It will be a major responsibility of the Planning and Zoning Commission to strictly control shoreline development and insure sound development design."

3. The Plan is intended as a guide for private and public decisions affecting the use and development of land and the provision of public facilities and service * * * Comprehensive Development Plan Brochure of February, 1970.

to a consideration of whether or not the County Council of Sussex County acted within the bounds of its authority in granting the complained of rezoning application of Sea Colony here in issue, and, if so, whether or not the decision in favor of Sea Colony's application was " * * * arbitrary, capricious or illegal."

Contending that both the Commission and the Council acted properly within the prerogatives of their legislative capacities after hearings at which the claimed rights of objectants to cross examine and to present evidence were not constitutionally guaranteed, defendants go on to argue that valid rezoning action was taken both by the County Planning and Zoning Commission and the County Council and that the record is devoid of any showing that the rezoning action of such governmental defendants, which is here in issue, was arbitrary, capricious, or in any way illegal. Defendants therefore ask that judgment be entered in their favor.

In support of their contentions plaintiffs claim that the record supports the following findings, namely (1) that members of the Planning Commission engaged in ex parte meetings with the president and counsel of Sea Colony after the record on the latter's application had been closed, thus causing the invalidation of the governmental action of which plaintiffs complain, Sangamon Valley Television Corp. v. United States, 106 U.S.App.D.C. 30, 269 F. 2d 221, and District of Columbia Federation v. Volpe, 148 U.S.App.D.C. 207, 459 F.2d 1281, (2) that Commission member McGee voted in favor of Sea Colony's rezoning application despite the fact that such commissioner was the beneficiary of plumbing contracts awarded by Sea Colony to such official's business firm, thereby invalidating the vote of the Commission in favor of rezoning, Mills v. Town Planning and Zoning Commission, 144 Conn. 493, 134 A.2d 250, it being contended that the self-interest of one member of the Commission is sufficient to infect the action of the other members, Buell v. City of Bremerton, 80 Wash.2d 518, 495 P.2d 1358, (3) that the

Council's action in granting rezoning violated the statutory provisions governing such action, (4) that the rezoning complained of was accomplished in an arbitrary and capricious manner, and (5) that both the Commission and Council erred in denying plaintiffs' right to cross examine witnesses at the hearings in issue.

Defendants, in reply, point out that generally speaking zoning authorities acting within their designated legislative powers have broad discretion, Mobil Oil Corp. v. Board of Adjustment (Del.Super.) 283 A. 2d 837, and that a rezoning grant is presumptively valid, Willdel Realty, Inc. v. New Castle County (Del.Ch.) 270 A.2d 174, and McQuail v. Shell Oil Co., 40 Del. Ch. 396, 183 A.2d 572. Furthermore, as defendants note, it has been decided in Conner v. Shellburne, Inc. (Supr.Ct.Del.) 281 A.2d 608, that whereas zoning hearings held prior to the conversion of the Levy Court to a County Council were conducted in a quasi-judicial manner that the legislative act of rezoning under the present ordinance powers of the County Council is basically similar to the law making process of any legislative body. Defendants concede, however, that to be valid a zoning hearing which results in violating the fundamentals of natural justice will not be upheld, Mitchell Land Co. v. Planning and Zoning Board, 140 Conn. 527, 102 A.2d 316. Compare Dukes v. Shell Oil Co., 40 Del.Ch. 174, 177 A.2d 785.

Next, defendants contend that a right to notice of hearing, the right to cross examine and the like in a proceeding such as the one at bar must be created by statute and that none of such rights, except the right to a hearing, exists here over the conduct of what to all intents and purposes has been converted into a legislative proceeding, 9 Del.C., Chapters 68 and 69, and this would seem to be the case, Conner v. Shellburne, Inc., supra. In addition, defendants argue that in light of the leeway · permitted to a non judicial authority to carry on its own investigative proceedings that an off the record meeting between county officials and representatives

of Sea Colony is within the normal bounds of conduct appropriate to the action of a legislative body.

Defendants go on to stress the fact that the Comprehensive Plan for Sussex County is in the nature of a statement of policy rather than an immutable zoning of the County for the indefinite future, and anticipates the adoption of specific zoning as well as other ordinances to provide for the actual future building and living standards for Sussex County. Compare Dukes v. Shell Oil Co., supra, in which the broad agricultural classification for much of rural New Castle County was deemed a transient classification subject to appropriate rezoning to either residential, industrial or commercial use.

As I see it, the basic question before the Court is whether or not the proceedings before the Commission and later before the Council having to do with the rezoning of the tract here in issue from a classification of medium density single family dwellings to high density housing [4] violate the fundamentals of natural justice and were thus characterized by arbitrary, capricious and accordingly illegal action. In facing up to this question, it should first be noted that the principle of zoning by planning and by regulation in Sussex County is found in 9 Del.C. Chapters 68 and 69, § 6904 of Chapter 69, reading as follows:

"Purposes of regulations

(a) Regulations adopted by the Levy Court, pursuant to the provisions of this chapter, shall be in accordance with the approved Comprehensive Development Plan and shall be designated and adopted for the purpose of promoting the health, safety, morale, convenience, order, prosperity or welfare of the present and future inhabitants of Sussex County, including, amongst other things, the lessening or congestion in the streets or roads or reducing the waste or excessive amounts of roads, securing safety from fire, flood, and other dangers, providing adequate light and air, preventing on the one hand excessive concentration of population and on the other hand excessive and wasteful scattering of population or settlement, promoting such distribution of population and such classification of land uses and distribution of land development and utilization as will tend to facilitate and provide adequate provisions for public requirements, transportation, water flowage, water supply, water and air pollution abatement, drainage, sanitation, educational opportunities, recreation, soil fertility, food supply, protection of the tax base, securing economy in governmental expenditures fostering the State's agricultural and other industries, and the protection of both urban and non-urban development.

(b) The regulations shall be made with reasonable consideration, among other things, of the character of the particular district involved, its peculiar suitability for particular uses, the conservation of property values and natural resources and the general and appropriate trend and character of the land, building and population development. Added 56 Del.Laws, Ch. 97, eff. July 13, 1967."

In view of these statutory guidelines for action by the governing body of Sussex County " * * * in accordance with the approved Comprehensive Development Plan * * * for the promotion by regulations of the * * * health, safety, morale, convenience, order, prosperity or welfare of the present and future inhabitants of Sussex County, including, amongst other

---

4. Section 4 of the Comprehensive Zoning Ordinance of Sussex County reads:
   "Section 4, MR Multi-Family Residential District.
   4.1 Purpose of the District.
   The purpose of this District is to permit variety in housing types and provide for residential densities appropriate for areas which are or will be served by sanitary sewers and public water systems, and which are well-located with respect to major thoroughfares, shopping facilities and centers of employment: "

things, the lessening of congestion in the streets or roads * * *", the approval of the drastic rezoning of the tract here in issue would appear to have been voted on favorably by the governmental defendants without regard to the above designated purposes or to the testimony and other evidence which indicated the inappropriateness of the type of building ultimately authorized by the rezoning classification for the area here involved. In other words, the evidence adduced at the hearings in question, as opposed to statements by attorneys, was to the effect that no thorough studies had been made prior to such rezoning as to the adequacy of the available or prospective sewage facilities in the Bethany Beach district, as well as the adequacy of the present or prospective water supply required for the needs of the occupants of the type of buildings authorized, and finally the building of the roads[5] needed to provide transportation to and from the proposed high rise buildings of Sea Colony. Furthermore, there is no indication that the governmental agencies which approved the rezoning under attack were given any specific information as to the social impact of Sea Colony on a previously low or medium density single family residential area, such agencies apparently taking the position that what might happen after the granting of the Sea Colony application was not their concern, having apparently granted rezoning merely because an HR classification is authorized by the Comprehensive Zoning Ordinance of Sussex County.

Finally, there is no indication in the record that any consideration was given by the governmental agencies here involved to the other factors to be taken into account under the provisions of 9 Del.C. § 6904, namely, the securing of safety from fire, flood and other dangers, the preventing of excessive concentration of population, the availability of public transportation, the abatement of water and air pollution, the availability of educational opportunities and facilities and the securing of economy in government.

■ I conclude that the action of the Commission and that of the County Council, in approving and granting the rezoning here in issue, was accomplished with virtually a total disregard for the provisions of 9 Del.C. § 6904 in an arbitrary and capricious manner violative of natural justice and so illegal because such rezoning, inter alia, bears no relation to the overall welfare " * * * of the present and future inhabitants of Sussex County * * *". I therefore conclude that such rezoning to a high density multiple housing use for the tract here in issue must be enjoined. There being no material facts in dispute, the equivalent of summary judgment on such ground, enjoining the consummation of the action of the governmental defendants, which approved and granted rezoning application CZ 80 of the defendant Sea Colony for the tract here in issue, must therefore be granted and the corresponding tacit motions of the defendants denied.

■ In conclusion, I am of the opinion that because it would be inappropriate short of trial at which the individuals involved would be called to testify and their good or bad faith determined, to decide either the issue of the alleged conflict of interest of one member of the Commission or that posed by off the record conferences between agents of Sea Colony and the government officials here involved, Campbell v. Commissioners of Town of Bethany Beach, 37 Del.Ch. 233, 139 A.2d 493, that judgment as to such issues must be denied on the present record.

Order on notice.

5. The testimony and notes of Laurence Kelpner, development review planner for the State Division of Highways, indicate that in his opinion as an expert that the increased traffic of Sea Colony would result in severe congestion by 1990 and that no improvements were under consideration by the Department for Route 14 at any time before 1990.