James E. TATE and Great Eastern, Inc., a corporation of the State of Delaware, Defendants Below, Appellants,

v.

George H. MILES, Jr., and Chester Foreman, individually and on behalf of other individuals similarly situated. Plaintiffs Below, Appellees.

COUNTY COUNCIL OF SUSSEX COUNTY, Ralph E. Benson, Charles W. Cole, Oliver E. Hill, William D. Stevenson, W. Howard Workman, County Planning and Zoning Commission of Sussex County, John L. Allen, Lloyd Hickman, Millard W. Monroe, Donald Ralph, Hugh P. Smith, Defendants Below, Appellants,

and

James E. Tate and Great Eastern, Inc., a corporation of the State of Delaware, Defendants Below, Appellants,

v.

George H. MILES Jr., and Chester Foreman, individually and on behalf of other individuals similarly situated, Plaintiffs Below, Appellees.

Supreme Court of Delaware.
Submitted: Oct. 1, 1985.
Decided: Jan. 9, 1986.

Melvyn I. Monzack (argued) and Francis A. Monaco, Jr. of Walsh and Monzack, Wilmington, for appellants Tate and Great Eastern.

A. Dean Betts (argued), Georgetown, for appellant Planning and Zoning Com'n of Sussex Co.

Richard E. Berl, Jr. (argued) of Griffin & Hackett, P.A., Georgetown, for appellees.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

CHRISTIE, Chief Justice:

In this case we are called upon to decide whether a change in a County zoning ordinance (or regulation), which applied to only two lots, can withstand challenge when the County Council failed to make a record under 9 *Del.C.* § 6904[1] to show that the requirements thereof have been met or to give sufficient reasons to justify the change under the statute.

In the Court of Chancery, plaintiffs Mills and Foreman brought this action individually and on behalf of others similarly situated seeking injunctive relief from the action of County Council of Sussex County ("Council") which had granted a rezoning application filed by Tate and Great East-

---

1. *Purposes of Regulations.*

(a) Regulations adopted by the county government, pursuant to the provisions of this chapter, shall be in accordance with the approved comprehensive development plan and shall be designated and adopted for the purpose of promoting the health, safety, morale, convenience, order, prosperity or welfare of the present and future inhabitants of Sussex County, including, amongst other things, the lessening of congestion in the streets or roads or reducing the waste of excessive amounts of roads, securing safety from fire, flood, and other dangers, providing adequate light and air, preventing on the one hand excessive concentration of population and on the other hand excessive and wasteful scattering of population or settlement, promoting such distribution of population and such classification of land uses and distribution of land development and utilization as will tend to facilitate and provide adequate provisions for public requirements, transportation, water flowage, water supply, water and air pollution abatement, drainage, sanitation, educational opportunities, recreation, soil fertility, food supply, protection of the tax base, securing economy in governmental expenditures, fostering the State's agricultural and other industries, and the protection of both urban and nonurban development.

(b) The regulations shall be made with reasonable consideration, among other things, of the character of the particular district involved, its peculiar suitability for particular uses, the conservation of property values and natural resources and the general and appropriate trend and character of land, building and population development.

ern, Inc. ("Great Eastern"). The property in question is adjacent to Cape Windsor, Fenwick Island, Sussex County. By Ordinance No. 132, Council changed the zoning classification of this property from a medium density residential zone to a general commercial zone. Tate and Great Eastern filed a counterclaim in which they asserted that plaintiffs intentionally interferred with their prospective business relationships. The parties filed cross-motions for summary judgment as to the validity of the rezoning of defendants' property. The Court of Chancery granted plaintiffs' motion for summary judgment and denied defendants' motion, and this appeal followed.

The stipulated facts as related by the Court of Chancery are essentially as follows. The plaintiffs own property in the Cape Windsor Development and are members of the Cape Windsor Community Association ("Association"). Great Eastern is in the business of real estate development. It is a Delaware corporation and Tate is its president. In settlement of several long-standing disputes, an agreement was executed between Tate and Great Eastern and the Association on January 8, 1983. The Association thereby promised to support Great Eastern's rezoning application in exchange for the opportunity to purchase certain parcels of real property. The agreement recognized that some individual members of the Association might oppose the rezoning application.

On March 24, 1983, the Planning and Zoning Commission of Sussex County held a public hearing to consider the rezoning application. The president of the Association told the Commission that the Association supported the rezoning application based on a referendum in which the responding property owners had voted three to one in favor of the settlement agreement.

The property in question involved two lots. At the time of the Commission hearing, one of them was apparently under a sales contract to a couple who were planning to put a bake shop or a marine store on that lot. The future use of the second lot was undetermined. The Commission was also informed that the Division of Highways had determined any additional traffic on the adjacent Route 54 would not affect the surface of the road.

Two association members, Mr. and Mrs. John Mack, objected to the rezoning. They complained that what they considered misleading materials were sent out in connection with the Association's referendum, that the proposed use of the first lot would result in increased traffic congestion, and that there was a problem as to the water supply which would be required. Following the hearing, the Commission recommended approval of the rezoning application.

The Council held a public hearing to consider the rezoning request. The hearing record discloses that Council adjourned the hearing after testimony from the supporters and the protestants, without expressing its views individually or collectively on the proposed change. Further, the record does not disclose any later meeting of Council at which the proposed zoning change was deliberated before it enacted the ordinance adopting the zoning change. On June 14, 1983, Council enacted an ordinance amending the zoning classification of the two lots in question to permit commercial use. The ordinance stated that:

> [T]he County Council of Sussex County has determined that such change of zone is in accordance with the comprehensive Development Plan and promotes the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of Sussex County....

No other statement of the basis for the Council's decision was provided in the ordinance.

The first issue is whether the plaintiffs have standing to maintain the instant action. Defendants contend that in order for plaintiffs to have standing as individuals to contest the action of Council, they must be "aggrieved" by the zoning decision. In

order to establish they are "aggrieved" defendants argue that plaintiffs must prove special damages. This is apparently an issue of first impression for this Court.

In general, in the absence of statutory restrictions, special damages have not been required as a prerequisite for a taxpayer to sue where the taxpayer must be accorded standing to enjoin improper official action in order to preserve recognized rights which are of general application to taxpayers and the public. *Lord v. City of Wilmington,* Del.Ch., 332 A.2d 414, 418–19 (1975); *Haddock v. Board of Public Education in Wilmington,* Del.Ch., 84 A.2d 157, 162–62 (1951).

■ However, we need not decide whether plaintiffs in this case could maintain this action if they had no specific interest in the rezoning. Assuming that special damages are required, the Court of Chancery made findings which would meet that requirement. Plaintiffs' own residential property in Cape Windsor is located approximately fifteen hundred feet from the rezoned land. The court found that plaintiffs claimed the rezoning "will result in increased traffic, noise, dirt, and trash and will interfere with the enjoyment of their property and that water supplies and other natural resources will be adversely effected by the rezoning." These assertions are general in nature, but they were uncontradicted on the record. When uncontroverted evidence is offered in support of a motion for summary judgment it is accepted as true. *Megee v. U.S. Fidelity & Guaranty Co.,* Del.Supr., 391 A.2d 189, 192 (1978).

■ Defendants argue that this factual finding by the Court of Chancery was based on plaintiffs' answer to an interrogatory, and that the court could not rely on such an answer to plaintiffs' interrogatory in determining summary judgment in favor of the plaintiff. We reject this contention. Chancery Court Rule 56(c) states that:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

This Court has said that in determining whether there is a dispute of material fact, the trial court must consider all evidence in the record which meets the standards of Rule 56. *Jones v. Julian,* Del.Supr., 195 A.2d 388, 389 (1963).

■ Defendants also claim that plaintiffs have only alleged a mere apprehension of uncertain speculative harm at an indefinite time in the future and that this is insufficient support for a jurisdictional requirement. *Weldin Farms, Inc. v. Glassman,* Del.Supr., 414 A.2d 500 (1980); *McQuail v. Shell Oil Co.,* Del.Ch., 183 A.2d 581 (1962). However, damage likely to arise from a zoning ordinance is not always subject to specific proof, and, as stated above, the record is uncontradicted that the claimed harm *will* come about, and this Court must accept that as true on a motion for summary judgment. Therefore, the claimed harm is not deemed to be so uncertain or speculative as to be disregarded under the circumstances here present.

Since we have determined that plaintiffs have sufficient standing as individuals to bring this suit, we need not decide whether they have standing as members of the general public or as representatives of others similarly situated.

County Council of Sussex County has determined that the change of zoning sought by Tate and Great Eastern is in accord with the Comprehensive Development Plan and that it "promotes the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of Sussex County...." However, no other statement of the basis for the Council's decision is found in either the hearing record, later minutes of Council meetings, or in the ordinance. The Court of Chancery ruled that Council must give a statement of its reasons if its zoning decisions are to withstand judicial review. We agree.

■ This Court has stated that zoning is a legislative function and a rezoning ordinance is usually presumed to be valid unless clearly shown to be arbitrary and capricious because it is not reasonably related to the public health, safety, or welfare. The burden of rebutting the presumption of validity and of showing that a rezoning is arbitrary and capricious is on those challenging the rezoning. However, if the reasonableness of a zoning change is "fairly debatable", the judgment of Council must prevail, and the court will not substitute its judgment for Council's. The court may set aside arbitrary and capricious zoning action, i.e. one that is not reasonably related to the public health, safety, or welfare. *Willdel Realty, Inc. v. New Castle County*, Del.Supr., 281 A.2d 612, 614 (1971).

■ Thus, although the Council's rezoning function is legislative, *Conner v. Shellburne, Inc.*, Del.Supr., 281 A.2d 608 (1971); *Willdel*, 281 A.2d 612; *Green v. County Planning and Zoning Commission of Sussex County*, Del.Ch., 340 A.2d 852 (1974), *aff'd sub nom. Sea Colony, Inc. v. Green*, Del.Supr., 344 A.2d 386 (1975), nevertheless, the Council's rezoning function resembles a judicial determination. This is because a valid zoning ordinance must be supported by a record sufficient to withstand judicial challenge. *Green*, 340 A.2d 852; 9 *Del.C.* § 6904.

In *Conner*, this Court said there was "no sound reason for distinguishing the legislative process in County Council from that in the General Assembly with respect to" how public hearings before Council are conducted. This Court there concluded that Council was not required to conduct public zoning hearings such as those required in adversary proceedings. However, clearly Council is not the precise equivalent of the General Assembly for all purposes. It is a subordinate legislature to the General Assembly, and it lacks authority to alter or disregard applicable statutory law.

For example, if the General Assembly were to enact a statute inconsistent with 9 *Del.C.* § 6904(a) the later statute would supersede the earlier statute, and there would be an implied repealer. *Board of Assessment Review of New Castle County v. Silverbrook Cemetary Co.*, Del.Supr., 378 A.2d 619 (1977). However, if Council enacted an ordinance inconsistent with 9 *Del.C.* § 6904(a), it would be invalid. 9 *Del.C.* § 6902. Council is bound by the General Assembly's command that Council consider the factors set forth by the General Assembly in 9 *Del.C.* § 6904(a). *Green*, 340 A.2d 852. The record must demonstrate that Council did what the statute requires.

Unless Council creates a record or states on the record its reasons for a zoning change, a court is given no means by which it may review the Council's decision. For example, in *Green*, 340 A.2d 852 (1974), where there was no indication in the record that any consideration was given by the Commission or by Council to the factors to be taken into account under 9 *Del.C.* § 6904, Council's action in rezoning was held to be arbitrary and capricious, violating "natural justice", and the rezoning was enjoined.

On the other hand, in *Wildell*, the record amply demonstrating that there was chaotic development and hazardous traffic conditions along Kirkwood Highway justified the rezoning, and the rezoning was not held to be arbitrary or capricious.

This Court finds essentially the same flaws exist in Council's action here as existed in the *Green* case. In this case the trial court was unable to determine from the record whether the zoning change was reasonably related to the public health, safety, or welfare because of a "critical omission" in the record of pertinent evidence and of a statement of the reasons for Council's conclusion that the rezoning would promote these goals. Given our standard of review, *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927, 930 (1982), we agree.

■ Appellants have argued that if this Court decides that Council must give reasons for its rezoning decisions, this case should be

remanded to allow Council to supply its reasons. This proposal suggests a dubious method of *ad hoc* after-the-fact legislation. The hearing process must, rather, begin anew.

■ Appellants have also urged that any rule requiring Council to supply its reasons should have only prospective application because such a rule would be a sudden departure from existing precedent. This Court expressly rejects that contention.

We note that these arguments were not presented to the Court of Chancery. These contentions come too late for orderly appellate review. In general, "[o]nly questions fairly presented to the trial court may be presented for review...." Supr.Ct.R. 8. Moreover, the Court of Chancery's opinion was foreshadowed in earlier cases cited by that court. *See, e.g., Green,* 340 A.2d 852.

■ Appellants also argue that neither appellees appeared and objected to the rezoning at the Commission or the Council stages. However, the Court of Chancery did not regard this failure on the part of appellees as barring their action. The record establishes that appellees used their Cape Windsor homes as summer residences and were not aware of the zoning hearings which were held in March and April. We find no error in the trial court's ruling on this point.

■ Finally, appellants argue that appellees are estopped from contesting the rezoning because they accepted the benefits of the settlement agreement between the Cape Windsor Community Association and Tate and Great Eastern. However, the agreement expressly recognized that, "Some members of the ... Association may ... oppose the rezoning which private activity is beyond [the Association's] control", and the agreement did not preclude appellees' action.

The judgment of the Court of Chancery is affirmed.