# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| MIDDLECAP ASSOCIATES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N23C-03-181 CEB |
| | ) | |
| THE TOWN OF MIDDLETOWN, a | ) | |
| municipal corporation of the State of | ) | |
| Delaware, THE TOWN OF | ) | |
| MIDDLETOWN TOWN COUNCIL, | ) | |
| the governing body of the Town of | ) | |
| Middletown, and KENNETH L. | ) | |
| BRANNER, JR., JAMES REYNOLDS, | ) | |
| AARON BLYTHE, JAMES ROYSTON, | ) | |
| DREW CHAS, ROBERT MCGHEE and | ) | |
| ROBERT STOUT, in their individual | ) | |
| and official capacities as Members of the | ) | |
| Town of Middletown Town Council, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: May 29, 2024
Decided: July 11, 2024

## OPINION

*Upon Certiorari Review of the
Denial of a Conditional Use Permit,*

## REVERSED.

John W. Paradee, Esquire, and Mark A. Denney, Jr., Esquire, BAIRD, MANDALAS & BROCKSTEDT, LLC, Dover, Delaware. *Attorneys for Plaintiff.*

Scott G. Wilcox, Esquire, GIORDANO, DELCOLLO, WERB & GAGNE, LLC, Wilmington, Delaware. *Attorney for Defendants*.

**BUTLER, R.J.**

# BACKGROUND

Middlecap Associates, LLC ("Middlecap") is a landowner in Middletown, De. It seeks to develop a plot of approximately 15 acres on Dove Run Centre Drive by constructing a garden apartment complex of 192 units.

The zoning for the property is C-3. Under the Middletown zoning code, C-3 is designated for "Employment/Regional Retail," intended to "provide service and retail environments and employment/office opportunities in a manner compatible with the historic character, scale, and architectural type of Middletown."[1] In order to build an apartment complex on the property, Middlecap needs a "conditional use permit."

A conditional use permit is a device whereby the governing body can review a planned improvement to the property and attach conditions to the permit. So, for example, while a shopping center is permitted in zone C-3 as a matter of right, C-3 zoning also permits, "subject to receiving a conditional use permit by the Town Council," 1) daycare centers, 2) sales of goods from transient vehicles and 2) garden apartments.[2]

---

[1] Middletown Zoning Code, page 40.

[2] Zoning code page 43-44. Although garden apartments require a conditional use permit in zone C-3, garden apartments are permitted as a matter of right in zone R-3 "Multi-Family Residential." Zoning code page 31.

1

The Middletown zoning code provides for a zoning board of adjustment, which exercises the powers typical of most zoning boards, considering appeals of zoning variances and other exceptions.[3]  But the zoning board of adjustment does not hear requests for conditional use permits.  Rather, conditional use permits are granted by the Town Council, "issued after consultation and review by the Planning Commission."[4]  In this case, Middlecap brought its plans to the Planning Commission, but the Planning Commission voted against grant of the permit by a vote of 6-1.

Undaunted, Middlecap brought its request to the Town Council.  The Town Council's action is the subject under review in this lawsuit.  The Town Council held a public hearing on the application.  Middlecap made a presentation, demonstrating the plot plan, drawings and spoke of the effects of the complex on traffic in the area.  After questioning by some council members, a vote was held, and the conditional use permit was denied by a council vote of 4-0.

## PROCEDURAL HISTORY

Middlecap's effort to obtain judicial review of the town council's action first took the form of a "Verified Petition" in the Court of Chancery.  There followed motions practice in the Court of Chancery.  On February 2, 2023, the Court of

---

[3] Chapter 8 of the zoning code.
[4] Section 10.A.(1)(b).

Chancery issued its decision in *Delta Eta v. Mayor and Council of the City of Newark*,[5] holding that Chancery does not have jurisdiction over conditional use permit disputes. Chancery went on to rule that a writ of certiorari, available in Superior Court, would provide the plaintiff with an adequate remedy. Since this case was essentially on all fours with *Delta Eta*, it too was dismissed by the Chancery Court,[6] leaving Middlecap with the option to transfer the dispute to Superior Court – an option Middlecap exercised shortly thereafter.[7]

Once in Superior Court, Middlecap re-filed its complaint. It then amended the complaint to remove the request for an injunction and add a request for certiorari review. There followed motions practice in this Court concerning the limitations period for filing a petition for certiorari in Superior Court, as well as naming the council members individually as defendants. These issues have been dealt with in a separate opinion.[8] The parties then briefed their contentions on the merits of the dispute.

---

[5] *Delta Eta v. Mayor and Council of Newark*, No. 2021-1106-MTZ, 2023 WL 2982180 (Del. Ch. Feb. 2, 2023).

[6] *Middlecap Assocs., LLC. v. Middletown*, No. N23C-03-181 CEB, 2023 WL 2981893 (Del. Ch. Feb. 2, 2023).

[7] A full discussion of the procedural history is found in the Court's previous denial of a motion to dismiss the case on procedural grounds. *See Middlecap Assocs., LLC. v. Middletown*, No. N23C-03-181 CEB, 2023 WL 6848999 (Del. Super. Oct. 16, 2023).

[8] Id.

## STANDARD AND SCOPE OF REVIEW

Under the laws of Middletown, there is no right of appeal from the denial of a conditional use permit. When there is no other available means to obtain judicial review of a government action, a writ of certiorari, which commands the inferior tribunal to deliver up the record to Superior Court for review, is the appropriate pleading.

When reviewing a dispute under the Court's certiorari jurisdiction, the Court is not free to do a "deep dive" into the record. In any number of cases, the Delaware Supreme Court has tackled the question of the scope of review and the "record below" that may be considered in certiorari cases. Because the Court's ruling here is directly tied to the standard of review on certiorari, we will save further comment for the Analysis below.

## ANALYSIS

### I. The Record Under Review in Certiorari Cases.

In *Black v. New Castle County Board of License Review,*[9] the Supreme Court reviewed an administrative decision of a county board on certiorari. The Court said:

> "The standard for reviewing a petition for a writ of *certiorari* is "strictly limited" the reviewing court "may not weigh evidence or review the lower tribunal's factual

---

[9] *Black v. New Castle Cnty. Bd. of License Review*, 117 A.3d 1027 (Del. 2015).

4

findings. Likewise, the reviewing court may not "consider the case on its merits." As this Court has observed, "[u]nder principles of law well established in this State, *certiorari* involves a review of only such errors as appear on the face of the record being considered."[10]

According to the Court, certiorari "brings up the record only so that the reviewing court can merely look at the regularity of proceedings" and that:

> "The reviewing court is then limited to determining based on that limited record whether the lower tribunal: "(i) exceeded its jurisdiction;" (ii) "proceeded illegally or manifestly contrary to law"; or (iii) "proceeded irregularly." Reversible procedural irregularity includes a tribunal's failure to create an "adequate record" for judicial review.[11]

*Maddrey v. J.P. Court 13*,[12] was an appeal of a summary ejectment proceeding. In her petition for certiorari relief in Superior Court, Maddrey argued that the magistrate at her trial had erred in admitting an investigator's report over a hearsay objection. Superior Court ruled that the magistrate did not err, the report was admissible, and denied relief.[13]

---

[10] Id at 1030-31 (footnotes omitted).
[11] Id at 1031 (footnote omitted).
[12] *Maddrey v. J.P. Court* 13, 956 A.2d 1204 (Del. 2008).
[13] *Sub nom. Maddrey v. Arbor Mgmt.*, No. 06A-09-003 WCC, 2007 WL 3287942 (Del. Super. Oct. 26, 2007).

On appeal to the Delaware Supreme Court, the Court said this:

> On a common law writ of *certiorari,* the Superior Court cannot look behind the face of the record. Rather, it can only review the record for the purpose of confirming an irregularity in asserting jurisdiction, an improper exercise of its power or the declaration of an improper remedy by the inferior tribunal. For a court to do anything more, such as combing the transcript for an erroneous evidentiary ruling as Maddrey asks us to sanction in this case, converts the limited *certiorari* review of summary possession into an impermissible full appellate review that is inconsistent with both the function of the common law writ *and* the General Assembly's intent to terminate landlord tenant possession disputes summarily.[14]

The Supreme Court said "the evidence presented to the Justice of the Peace Court, including the testimony reflected in the transcript, is not a proper part of the record subject to Superior Court's review."[15] Doing so "necessarily contemplates that the Court will weigh and evaluate the evidence," and is little more than a "device to circumvent the requisites of appellate jurisdiction of the Court."[16]

## II. The Record Here is Limited to the Council's Vote and Any Explanation.

So far, we understand that certiorari review is limited to 1) jurisdiction, 2) "manifest" errors of law, and 3) procedural "irregularity." Jurisdiction is not at issue in this dispute. Errors of law sit in that ambiguous space in which "manifest" error

---

[14] *Maddrey* , 956 A.2d at 1215.
[15] *Maddrey* , 967 A.2d at 1216.
[16] Id (citing *Castner v. State*, 311 A.2d 858 (Del. 1973)).

is reversible, but due to the limited nature of the review on certiorari, a legal conclusion about which there may be disagreement is not reviewable. The only "error of law" the Court discerns from this record is the "procedural regularity" question and, mindful of the Supreme Court's admonition to avoid a detailed review of the record, the Court limits its review to the actual votes by Council and its explanations for voting in that manner. Thus, the review here is of the procedural regularity of the Town Council's vote.

### a. There is no written opinion; the transcript is the only record.

In order to review the procedural regularity of the proceedings concerning the conditional use permit request, the Court must be satisfied that the tribunal applied the law to the facts. This is important because the failure to create an adequate record for judicial review is itself a "procedural irregularity."[17] Creating such an "adequate record' is usually accomplished in administrative cases because there is a written Opinion of the board or agency. In the usual case, reference to the transcript of the proceeding is unnecessary because the quasi-judicial rationale for the decision by the agency is subsumed within its written opinion.

---

[17] *Christiana Town Ctr., LLC v. New Castle Cnty.*, No. 3342004, 2004 WL 2921830 (Del. Dec. 16, 2004) (citing Woolley, Delaware Practice, Volume 1, §923).

Here, there is no written Opinion, only a transcript of the proceedings before the Council. While the entire transcript is outside the scope of review in a certiorari proceeding, the transcript reflects the votes of the council members and their reasoning for doing so. That record begins at page 40 and ends at page 42. Since it is the only memorial of the "regularity" of the proceedings, it will be considered.

**b. The votes and the stated reasons.**

The transcript reflects Councilman Royston voted no, expressing that "I believe we should deny the conditional use permit based upon the approval from 2020 commercial space center. I think we should maintain and retain the approved plan."

Councilman Blythe voted no, saying "I think it's in conflict with the comprehensive plan that we have talked about all night."

Councilman Chas voted no "for the reasons previously discussed" and because the comprehensive plan "was necessary at the time and still feel that the residents deserve."

Councilman Reynolds voted no, saying deviation from the present plan "is in conflict with the general purposes of the comprehensive plan and related town plans."

8

Councilman McGhee voted no "because this would be detrimental to the general purposes of the comprehensive plan."

And with that, the plan was unanimously disapproved.

### III.  The Middletown City Code Requirements for Conditional Use Permits.

In Middletown, the city code requires that a conditional use permit not:

(i)    Affect adversely the health or safety of persons residing or working in the neighborhood of the proposed use;

(ii)   Be detrimental to the public welfare or injurious to property or improvements in the neighborhood; and

(iii)  Be in conflict with the general purposes of the Comprehensive Plan or related Town planning or development policies.[18]

These are the standards against which the application for a permit must be judged by the council, exercising its quasi-judicial function.  And since "adverse effects on health" or "detriment to public welfare" were not mentioned by the council, it is safe to say that all votes were cast because the council felt the proposed conditional use conflicted with "the general purposes of the Comprehensive Plan or related Town planning or development policies."

---

[18] Middletown Zoning Code, §10.A(1).

Just what these general purposes are, or what related planning or development policies were implicated by the application, or how the permit application conflicted with those purposes is not part of the record under review. This is a problem.

Undoubtedly the parties would like to continue to argue the issue now, but the Court is not a voting member of the town council and the merits are of no concern at this point. What is concerning is the absence of any rationale for these conclusions. The Court is not in a position to conduct judicial review of a vote that simply recites the legal standard in conclusory fashion, devoid of any integration of facts that support it.

As briefly as possible, let us consider that the General Assembly has the full power to regulate land use throughout the state.[19] Its votes are a true exercise of legislative power, limited only by the Constitution. When the power to regulate land use is delegated to counties and towns, the power must be exercised within its delegated limits, and whether the county or town has done so is subject to judicial review, just as the county's and town's delegation of licenses or permits or zoning variances are frequently delegated to administrative agencies. When a county or town council retains the power to vote on a land use issue, it is subject to judicial review just as an administrative agency is – to ensure that its actions are within the

---

[19] Del. Const. art.II, §25.

delegated powers conferred by the higher authority and that it has acted with due process. "Normal" legislative prerogatives of the legislative process are absent when the legislative activity concerns delegated powers and, as we will see, legislators can quite easily forget that a zoning decision does not offer the same freedom of choice that other legislative affairs may.

### IV. Land Use Decisions Require an Adequate Record for Judicial Review.

The requirement of creating an adequate record for review is not a platitude. In *Miles v. County Council of Sussex County,*[20] Sussex County Council rezoned some land, saying the change was "in accordance with the comprehensive Development Plan and promotes the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of Sussex County."[21] The reader may recognize this as the same sort of formulaic, conclusory language used by Middletown here. The Chancery Court said "This statement is not a finding of fact and provides the Court no guidance in attempting to review the Council's decision."[22] Moreover, citing multiple prior decisions,[23] the Court said "For ten

---

[20] *Miles v. Cnty. Council of Sussex Cnty.,* 1985 WL 165744, at *2 (Del. Ch. Jan. 21, 1985).

[21] Id.

[22] Id at *3.

[23] *Green v. Cnty. Planning & Zoning Comm'n. of Sussex Cnty.*, 340 A.2d 852 (Del. Ch. 1974); *Moore v. Gravenor*, Del. Ch. C.A. 684-S, Hartnett, V.C. (March 7, 1978); *Russell v. Cnty. Council of Sussex Cnty.*, Del. Ch. C.A. 695-S, Brown, V.C. (April 25, 1978); B*ay Colony, Ltd. v. Cnty. Council of Sussex Cnty.,* et al., Del. Ch. C.A. 1001-S, Hartnett, V.C. (December 5, 1984).

years now the Council has been on notice that it must make findings of fact if its zoning decisions are to withstand judicial review."[24] These rulings were adopted by the Supreme Court on appeal in the oft cited case of *Tate v. Miles.*[25]

In *Christiana Town Center, LLC v. New Castle County,*[26] a writ of certiorari case, the Court said "A decision will be reversed for irregularities of proceedings if the lower tribunal failed to create an adequate record to review."[27] In *Reise v. Board of Building Appeals of the City of Newark,*[28] the city agency revoked a rental permit but did not provide a statement of the reasons. The Supreme Court said "it is settled law that a quasi-judicial tribunal must state the basis for its decision, in order to allow judicial review."[29]

In *New Castle County Council v. BC Development Associates,*[30] the county council rejected a rezoning of the former Brandywine Country Club. As here, the votes were cast with only perfunctory reasons given. The Court wrote that "when Council makes a rezoning decision without establishing the basis for its action, it

---

[24] Id.
[25] *Tate v. Miles*, 503 A.2d 187 (Del. 1986).
[26] *Christiana Town Ctr.*, 2004 WL 2921830.
[27] Id at *2 (citing Woolley, Delaware Practice, §923).
[28] *Reise v. Bd. of Bldg. Appeals of Newark*, 746 A.2d 271 (Del. 2000).
[29] Id at 274.
[30] *New Castle Cnty. Council v. BC Dev. Assocs.,* 567 A.2d 1271 (Del. 1989).

thwarts the ability of a court to provide effective review."[31]  As to exactly how

detailed that record must be, the Supreme Court said this:

> insofar as Council simply "creates a record" and relies upon that record to justify its decision, the record must prove to be an adequate substitute for a more formal explanation. Thus, Council's reasons must be clear from the record. If several possible explanations for a given decision appear on the record, the reviewing court must not be left to speculate as to which evidential basis Council favored. We lay down no precise formula that Council must follow in order to satisfy the _Tate_ requirements. Nevertheless, we believe that when Council is faced with a particularly complex zoning application and a large body of conflicting evidence is presented for its consideration, a formal statement of its findings would greatly aid the process of judicial review.[32]

The Court must conclude that merely reciting a code provision in support of

a "no" vote is not a statement of reasons for the vote.  Certainly, a reviewing Court

does not need an extensive recitation of all the whys and wherefores, but some

connection of the facts as found by the council person and the legal standard being

applied is essential to ensure that the quasi-judicial decision was made with fidelity

to the law.

It is not as though the requirement of a record for judicial review is news to

the Town of Middletown.  The Town Council was involved in a rezoning case

---

[31] Id at 1276.

[32] Id at 1276-77 (footnote omitted).

wherein these very principles were laid out specifically by the Vice Chancellor. In the protracted litigation over a Walmart store location, *O'Neill v. Town of Middletown*, one of the decisions voiding council's rezoning vote was predicated on council's failure to articulate its reasons for finding that the planned commercial activity was consistent with the Comprehensive Plan adopted by the city.[33] Just as a failure to articulate why a proposed rezoning is consistent with the Comprehensive Plan is fatal to the council's action, a failure to articulate why a conditional use is inconsistent with the Comprehensive Plan is likewise fatal.

In light of the foregoing, the decision of the Town Council must be voided. It may well be that the Council had bona fide reasons to deny the application that are grounded in one or more of the three statutory criteria above. The Court merely concludes that this record is not sustainable because it fails to articulate a record of reasons sufficient for judicial review.

## V. Plaintiff's Remaining Claims are Dismissed.

As noted above, this dispute has had a somewhat unusual procedural history, travelling from Chancery Court as a "Verified Petition" seeking injunctive relief to

---

[33] *O'Neill v. Middletown*, No. Civ.A. 1069-N, 2006 WL 205071 at *34-36 (Del. Ch. Jan. 18, 2006).

14

Superior Court seeking certiorari. In both forums, however, the pleadings included a prayer for declaratory judgment.

By this ruling, the Court does not conclude that Middlecap is entitled to a conditional use permit. Rather, the Council's vote was defective insofar as it failed to articulate its rationale sufficiently for judicial review. Council is free to reject the application again, should it be made, so long as it does so with reference to the criteria in the code and articulates its reasoning in sufficient detail to demonstrate that it proceeded with "regularity."

In light of this ruling, the rights and duties of the parties remain where they were. The Court therefore declines to rule on Plaintiff's prayer for a declaratory judgment.[34] Plaintiff's remaining arguments in favor of reversal of the Council's actions are dismissed as moot.

**CONCLUSION**

Chancery Court's rejection of jurisdiction over conditional use permit litigation may well give rise to additional lawsuits in Superior Court, invoking this Court's power to issue writs of certiorari. As we have seen here, certiorari review is a different analysis from Chancery's general equitable jurisdiction. Thus, questions will need to be worked out, including how the standards traditionally referenced by

---

[34] *See* 10 Del. C. §6501 (Court has discretion to refuse to enter a declaratory judgment).

15

Chancery will apply given the more limited review in certiorari cases. The Court does not shy from the challenge, but the necessity of a record from which such review can occur will remain as true in Superior Court as it has for many years in Chancery Court.

**IT IS SO ORDERED.**

/s/ Charles E. Butler
Charles E. Butler, Resident Judge