# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| 330 HOSPITALITY GROUP, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Petitioner, | ) ) ) | C.A. No. S22C-11-016 RHR |
| v. | ) ) | |
| THE CITY OF REHOBOTH BEACH, a municipal corporation, THE BOARD OF COMMISSIONERS OF REHOBOTH BEACH, the governing body of The City of Rehoboth Beach, and THE PLANNING COMMISSION OF REHOBOTH BEACH, | ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

Submitted: April 16, 2024
Decided: July 23, 2024

Upon Certiorari Review of the Denial of a Rezoning,
REMANDED.

## MEMORANDUM OPINION

Richard E. Berl, Jr., Esquire, Hudson, Jones, Jaywork & Fisher, LLC, Lewes, Delaware, *Attorney for Petitioner*.

Daniel A. Griffith, Esquire, Thomas Wallace, Esquire, Whiteford, Taylor & Preston, LLC, Wilmington, Delaware, *Attorneys for Respondents*.

ROBINSON, J.

330 Hospitality Group, LLC ("330") appeals the City of Rehoboth Beach Commissioners' (the "City") denial of a rezoning application. It asks this court to reverse the City's decision and to order the City to grant the rezoning. 330 claims that it satisfied the requirements of the municipal code for a rezoning, the commissioners did not support their denial with substantial evidence, and the applicant was denied a fair hearing. Because the City failed to create a proper record for review, this matter is REMANDED to the City for a new hearing.

**FACTS AND PROCEDURAL HISTORY**

A. The Property.

330 is the owner of a parcel of land located at the intersection of Rehoboth Avenue and State Street in the city limits of Rehoboth Beach, Delaware (the "Property").[1] The Property contains a building that was a popular restaurant for many years and a parking lot that served the restaurant. The Property is split-zoned. The portion of the Property where the building is located sits along Rehoboth Avenue (the main road into the city) and is zoned C-1 Commercial. The parking lot portion of the Property primarily fronts State Street (another major road into the city) and is zoned R-1 Residential. The parking lot is a legal, non-conforming use in an R-1

---

[1] The Property has a single tax map number and is considered a single parcel, but it is composed of multiple lots that were plotted in the early development of Rehoboth.

district. 330 hopes to build a hotel on the Property and, as part of that process, sought to have the R-1 portion of the parcel rezoned to C-1.

B. Proceedings before the City.

The road to the present appeal is long. It began in 2019 when 330 presented a concept plan to the Rehoboth Beach Planning Commission. The plan called for a new hotel to be built on the Property where the building currently stands. The plans also called for parking and an entrance into an underground parking garage on the portion of the Property that currently contains the parking lot. Section 236-1 of the Municipal Code of the City of Rehoboth Beach allows an applicant to present informal plans to get feedback from the Planning Commission before the applicant invests time and money in more detailed plans. The Planning Commission recognized that 330 had two routes available to move forward with its plans: (1) leave the R-1 zoning intact but obtaining variances from the Board of Adjustment to allow for continued use of the R-1 portion of the parcel as a parking lot and entrance to an underground parking garage or (2) seek a rezoning of that portion from R-1 to C-1. The Planning Commission indicated it preferred the second option, and 330 filed the rezoning request on June 17, 2019.

After it filed the formal rezoning request, 330 and the then-property owner had a dispute that resulted in litigation. The dispute was resolved when 330 purchased the Property and restarted the rezoning process with the Planning

2

Commission in March 2021. As part of its application before the Planning Commission, 330 offered to record deed restrictions that would restrict what could be built on the Property through establishing setbacks (there are no setback requirements in the C-1 District) and lot coverage restrictions. After several more hearings, the Planning Commission voted to recommend denying the rezoning by a 5-3 vote.[2]

The application then went to the Rehoboth Beach Board of Commissioners who had the final authority to approve or deny the rezoning. At a public hearing on February 18, 2022, 330 argued that the 2010 Comprehensive Development Plan emphasized the creative redevelopment of properties around the Property and discouraged nonconforming properties. The Commissioners decided to allow the public record to remain open and considered the application again on March 18. At that meeting, the commissioners voted 5-2 to deny the rezoning request.

C. 330 appeals the City's decision.

330 appealed that decision to the Court of Chancery. In addition to the City, that complaint also named the City commissioners and members of the Planning Commission individually. The complaint included the following counts: violation of

---

[2] 330 points out that only one member of the 2021 Planning Commission that voted to recommend denial of the rezoning was on the 2019 Planning Commission that suggested 330 proceed with rezoning rather than variances.

the city code, violation of 22 *Del. C.* §702(D)[3]; equitable estoppel; declaratory judgment; injunctive relief; and damages. The City filed a motion to dismiss.

At oral argument on the motion to dismiss on October 17, 2022, and in an Order issued the same day, the Court of Chancery dismissed the equitable estoppel claim and found that it did not have subject matter jurisdiction over the remaining claims. The court found that 330 had an adequate remedy at law through a writ of certiorari and allowed 330 to transfer the remaining claims to Superior Court under 10 *Del. C.* § 1902. Plaintiff then filed a complaint for declaratory relief in this court on November 17, 2022 that raised two claims: violation of the city code and violation of 22 *Del. C.* § 702(D).

After receiving 330's complaint, the City asked for a status conference. 330 opposed that request, arguing that no conference was necessary and that the City should file an answer. Instead, the City filed a motion to dismiss. It argued that a writ of certiorari, not declaratory judgment, was the proper avenue for this court to review the City's denial of the rezoning request.

At a telephone conference on the motion to dismiss, it became apparent that the parties needed guidance as to the proper method of proceeding in this court after the transfer from the Court of Chancery. For many years, land-use practitioners

---

[3] This statute requires municipalities to prepare and approve a comprehensive development plan. Those plans have the force of law and zoning decisions must be in accordance with them.

sought relief from municipal and county zoning decisions in the Court of Chancery.[4] The Court of Chancery's decision in *Delta Eta Corp. v. City of Newark*,[5] however, has forced a reconsideration of that practice. The Court of Chancery likewise dismissed similar complaints in *Citizens Against Solar Pollution v. Kent County*,[6] and in *Middlecap Assoc. v. Town of Middletown*.[7] At the conclusion of the telephone conference, 330 agreed to refile this action as a writ of certiorari. The City filed its answer along with the record of the proceedings before the City.

## THE PARTIES' CONTENTIONS

330 argues that this court should reverse the City's decision because (1) it met the requirements for a rezoning as a matter of law, (2) the reasons for the denial of the rezoning are not supported by the record, and (3) it did not receive a fair hearing. First, 330 claims the rezoning should be granted as a matter of law because split-zoning and ongoing non-conforming uses are disfavored, and the rezoning request complied with the Comprehensive Plan which called for improvements to the city's gateway. It also claims that the City ignored its own planning consultant, who worked with 330 and the City's attorney to craft deed restrictions that would impose restrictions on the project that would not normally apply in a C-1 zone, such as

---

[4] Indeed, most of the cases cited by the parties in their briefing are Court of Chancery decisions.
[5] 2023 WL 2982180 (Del. Ch. Feb. 2, 2023).
[6] 2023 WL 2199646 (Del. Ch. Feb. 24, 2023).
[7] 2023 WL 2981893 (Del. Ch. Feb. 2, 2023).

setback and height requirements. It argues that the project met the code requirements for a rezoning found in section 270-1(B) of the Municipal Code of Rehoboth Beach.

Second, 330 claims that the record does not support the City's denial because there was no evidence in the record that the character of the neighborhood would change or that neighboring properties would be harmed.

Finally, 330 argues that it did not receive a fair hearing because one of the commissioners did her own research and improperly introduced it into the record, demonstrating her bias. Also, 330 claims that one of the speakers in opposition had a conflict of interest because he was a member of the Planning Commission that considered 330's application.

The City responds by pointing out that municipalities have broad discretion over zoning decisions. It also claims that the decision was supported by the record, the reasons for the denial were properly articulated, and the decision was based on the code. It points out that there was widespread opposition to the rezoning and that the Planning Commission recommended denial. The City also states that asking this court to order the City to rezone the property is an extraordinary form of relief.

## JURISDICTION

Before this case can be decided on its merits, however, several questions must be addressed. First, does the Superior Court have jurisdiction to resolve this case? Second, if so, what type of action is this? And third, what is the appropriate standard

of review? While the answers to these questions are normally obvious, the landscape for reviewing land use decisions has changed recently. As noted previously in this decision, land-use practitioners sought relief from municipal and county zoning decisions in the Court of Chancery, and the Court of Chancery's decision in *Delta Eta Corp. v. City of Newark*, effectively redirected many of these cases to Superior Court, despite the resistance of some of the attorneys involved.[8]

A. Jurisdiction.

There is one significant difference, however, between this case and the *Middlecap* and *Citizens Against Solar Pollution* cases that were also transferred from the Court of Chancery to Superior Court: this case involves a rezoning, which has traditionally been considered a legislative act,[9] while the other two cases concern conditional uses, which are quasi-judicial acts. Writs of certiorari are available only for quasi-judicial, not legislative, acts. *Delta Eta* described the difference as: "An entity acts in a quasi-judicial capacity where it applies existing laws to a set of facts before it. In other words, a quasi-judicial act carries out existing legislative policy,

---

[8] *See, e.g.*, *Citizens Against Solar Pollution v. Kent Co*., 2023 WL 6884688, at *4 (Del. Super. Ct. Oct. 17, 2023) ("Plaintiffs' opposition is multi-faceted. Through various restyled contentions, Plaintiffs' argument against dismissal can be distilled to a single theme of criticism and disagreement with the *Delta Eta* ruling. According to Plaintiffs, the Court 'jettisoned decades of decisions that it had jurisdiction over zoning cases.'").

[9] *Delta Eta*, 2023 WL 2982180, at *11 ("Settled Delaware law provides that zoning and rezoning are both legislative functions."); *Citizens Against Solar Pollution*, 2023 WL 6884688, at *8 ("Plaintiffs concede that the rezoning function is legislative.").

7

rather than making new policy. By contrast, an entity acts in a legislative capacity when it creates new laws, or effectively amends or repeals existing laws."[10]

*Delta Eta* concerned the denial of a special use permit, which, the Court of Chancery determined, was a quasi-judicial act so there was an adequate remedy of law through a writ of certiorari in Superior Court. Here, in finding that there was an adequate remedy at law in Superior Court, the Court of Chancery did not address the question of whether the City's denial of 330's rezoning was a legislative or quasi-judicial act.

The court brought this quandary to the attention of the parties by letter dated March 28, 2024 and conducted a video conference on April 16. At the conference, the City urged this court to send the case back to the Court of Chancery because a writ of certiorari is not available for legislative acts such as zoning. In the alternative, it suggested this court should certify a question of law to the Delaware Supreme Court to get clarification as to which court had jurisdiction in light of the *Delta Eta* decision. 330 argued that the case should go forward as a declaratory judgment action, which is how it initially filed its complaint in Superior Court after the transfer from the Court of Chancery.[11] There are downsides with any of these possible solutions. There is, however, a more efficient and logical way forward.

---

[10] *Delta Eta*, 2023 WL 2982180, at *11.
[11] Calling the cause of action in Superior Court a declaratory judgment circumvents the fact that there is no right of appeal from decisions of the City.

B.  What type of case is this, and what type of case should it be going forward?

The proper way forward requires a slight refinement to the blanket statement that zonings and rezonings are legislative acts.[12] While zoning—the creation and amendment of zones and the enumeration of permitted uses and building restrictions within each zone—is certainly legislative, the rezoning of an individual parcel (as in the present case), more closely resembles a quasi-judicial act. In a typical rezoning of an individual parcel, the applicant presents evidence in support of the rezoning to the governing body, which must then apply the law—e.g. the city's code or comprehensive plan—to the unique facts of the parcel to decide whether to grant or deny the application. The governing body will typically hear opposing arguments that it must also weigh and consider. That process resembles the quasi-judicial process to obtain a conditional use or special use exception for an individual property. It has been noted that:

> . . . the facts that (1) rezoning usually functions as a project specific development approval with identifiable proponents and opponents, and (2) rezoning constitutes, in reality, more an act of a policy application to a specific small land area, rather than an act of policy setting for an entire community, have led a large body of modern commentators to increasingly question the appropriateness of the legislative label and the deferential review standards applied in consequence thereof.[13]

---

[12] *See, e.g.* Rathkopf's The Law of Zoning and Planning, § 46:15 ("[T]he view that all rezoning actions may properly be classified as legislative has been strongly criticized and is not universally followed. A number of state courts hold that the rezoning of a small single-parcel tract is a quasi-judicial decision . . .").

[13] Rathkopf's The Law of Zoning and Planning, § 40:6.

Whether a rezoning is a legislative or quasi-judicial act will depend on various factors such as the nature of the rezoning request, the scale of the project, and the impact of the rezoning on neighboring properties. For example, when a municipality changes the list of uses in a zone that applies equally to *all* landowners within that zone, that act is clearly legislative. But when an *individual* landowner seeks a rezoning of property she owns, presents evidence and arguments in favor of that application, the town holds a public hearing, there is an opportunity to hear opposing views, and the governing body issues a decision in accordance with its laws, that process resembles a quasi-judicial act.

This approach—treating a rezoning of an individual parcel as a quasi-judicial act that would make a writ of certiorari in Superior Court an adequate legal remedy—has roots in Delaware law. In *Tate v. Miles*, for example, the Delaware Supreme Court noted that "although the [Sussex County] Council's rezoning function is legislative, nevertheless, the Council's rezoning resembles a judicial determination."[14] In *New Castle County Council v. BC Development Associates*, the Delaware Supreme Court noted that while rezoning is a legislative act, "the legislative power that reposes in the Council is not inherent; rather, it has been delegated to the Council by the General Assembly. 9 *Del. C.* § 2601. Thus, in the

---

[14] 503 A.2d 187, 191 (Del. 1986).

realm of rezoning, the power of Council is analogous to that of an administrative agency. . ."[15]

Finally, allowing rezonings of individual parcels to be appealed to Superior Court through a writ of certiorari would lend consistency to the way land use appeals involving individual applications are handled. Otherwise, appeals of certain land use matters, including conditional uses and special use exceptions, would go to Superior Court as a writ of certiorari, while challenges to rezoning decisions of similar size and scope would be filed in the Court of Chancery, which would apply an "arbitrary and capricious" standard.

## STANDARD OF REVIEW

There is no statutory right of appeal from the City's decision on 330's application. A writ of certiorari is not the equivalent of an appeal, and the reviewing court is strictly limited in what it can consider. In *Black v. New Castle Co. Bd. Of License*, the Delaware Supreme Court stated that the reviewing court "may not weigh evidence or review the lower tribunal's factual findings" and cannot consider the case on its merits.[16] The review is limited to determining whether the lower tribunal: "(i) exceeded its jurisdiction; (ii) proceeded illegally or manifestly contrary to law; or (iii) proceeded irregularly."[17] Typically, a transcript of the proceedings

---

[15] 567 A.2d 1271, 1275 (Del. 1989).
[16] 117 A.3d 1027, 1031 (Del. 2015).
[17] *Id.* at 1031 (internal citations omitted).

11

below is not an appropriate part of the record, but, in this case, the decision of the commissioners is found only in the transcript, so it is a necessary part of the record for review.

## DISCUSSION

In the present matter, there is no argument that the City did not have jurisdiction to consider 330's rezoning application. Amending the zoning code is one of the important and necessary functions of the City. The remaining two factors are at issue, however. As this court noted recently in *Middlecap Associates, LLC v. The Town of Middletown*, "errors of law sit in that ambiguous space in which 'manifest' error is reversible, but due to the limited nature of the review on certiorari, a legal conclusion about which there may be disagreement is not reviewable."[18] As in *Middlecap*, the review here must consider the procedural regularity of the City's vote.

Prior to voting on 330's application, the City's solicitor provided the following guidance to the commissioners:

> The courts have said that they're not going to scour the record of the hearings to see who voted why and what the reasons were. So, this is the time where it's your opportunity to say why you're either voting for the motion or not for the motion. Things like consistency with character of the neighborhood, things like consistency with code; all of those sorts of things that you've kind of deliberated up here. Now is the time to kind of assimilate it down into your vote.[19]

---

[18] 2024 WL 3385825, at *3 (Del. Super. Ct. July 11, 2024).
[19] Tr. Meeting held March 18, 2022, D.I. 27, at 35.

Despite that advice, the commissioners who voted against the rezoning explained their vote as follows.[20] Commissioner Sharp stated, "The restrictions of our [R-1 zoning][21] should apply. The zoning maps should be able to be counted on. It will give assurance to the neighborhoods for integrity and it supports our residential character as is mentioned in the CDP [an abbreviation for Comprehensive Development Plan.]"[22] It appears she based her vote on her view that property owners should be able to rely on the existing zoning maps never changing, and to preserve the residential character of Rehoboth (which also has significant commercial character as well). Beyond her apparent opposition to any changes to the zoning map, however, it is not clear what facts about this particular application she relied upon to reach her no vote. Commissioner Legree relied on Commissioner Sharp's reasoning by announcing his vote as, "Nay for the reasons Commissioner Sharp gave especially about changing the character of the neighborhood."[23]

Commissioner Gay provided the following explanation for her vote:

I believe that the historical precedents are being upheld in the upcoming new CDP with multiple statements that would argue in favor of keeping the R-1 zone. First of all, the 2020 plan maintains the goals that were stated in the 2010 plan about—and there's a statement here, that the City will assure that its land use and zoning code are drawn to avoid any negative impact of commercial development upon residential

[20] I provide the full text of their comments to give the commissioners the greatest possible deference to their votes and reasoning.

[21] Tr. Meeting held March 18, 2022, D.I. 27, at 36. (The transcript reads "our 1-zoning.")

[22]*Id.* at 36.

[23] *Id.* at 36-37.

13

neighborhoods. In addition to maintaining that goal in the 2020 plan, the plan—the new plans goes further and it emphasizes balance and compatibility with existing scale in each and every point made about commercial redevelopment. And there's an entire position statement on general use of land that supports that. In addition, the 2020 CDP includes a future land use map that does not contemplate any rezonings and does not recommend expanding any commercial zone or reducing any residential zone. So, for these reasons, I think that the change would not be in character with the surrounding area and not consistent with the goals of the CDP, both the 2010 and the new 2020.[24]

The problem with her reasoning, however, is that the 2020 CDP was not yet the law, and therefore has no applicability to the vote on this rezoning.[25]

Commissioner Gossett explained his reasoning as follows: "I vote no as based on the proposed rezoning does not meet the purpose of the zoning ordinance in that it does not promote the orderly growth, convenience, order, and welfare of the City of Rehoboth Beach. And it does not bring the zoning map into conformity with the sound zoning ordinances that we profess."[26] In *Miles v. County Council of Sussex County*, the Court of Chancery found the Council's reasoning was insufficient for review where it simply stated that the zoning change was "in accordance with the Comprehensive Development Plan and promotes the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of

---

[24] Tr. Meeting held March 18, 2022, D.I. 27, at 37-38.
[25] Pl. Op. Brf., D.I. 30, at 29.
[26] Tr. Meeting held March 18, 2022, D.I. 27, at 38.

Sussex County." [27] This language is similar to the statement from Commissioner Gossett, and is therefore not a sufficient explanation of this vote.

Finally, Mayor Mills provided the only thorough and satisfactory explanation for his no vote:

> You know, this is a –to me, I look at this as about two zones. I find that the owner can make reasonable use of both the commercial and the residential zone portions of the property as is. For me, the rezoning of the residential to commercial is not addressed in the CDP as was intimated earlier. Other rezonings in the City within the CDP have much more specificity. It actually indicates that say the fifth lot or fourth block of Sussex, by example, would be rezoned. We don't have direct reference here. I believe the rezoning would have a negative impact on the abutting residential properties based on the potential commercial uses allowed above the just parking if rezoned. Specific, by example, for light, air and nose [sic] impacts. Noise impacts. For me, with the current design proposal, to underground the parking on residential portions and restore grade parking seems to be a good proposal that should not be offensive to neighbors. In fact, we at least had at least one neighbor previously saying so and he says he also speaks for some of his neighbors in one of the residential units closest to this residentially zoned lot. So this seems to be more appropriate for consideration by the Board of Adjustment and some form of variance rather than a rezoning. And that's one of the reasons for my—I also agree with the explanation from Commissioner Sharp.[28]

The Mayor's explanation cited specific facts about the application and the Property, and appropriately connected his reasoning for his no vote to those facts. Unfortunately, by the time Mayor Mills made his statement, 330's application had already received four no votes and was thereby defeated.

---

[27] 1985 WL 165744, at *2 (Del. Ch. Jan. 21, 1985).
[28] Tr. Meeting held March 18, 2022, D.I. 27, at 39-40.

From this record, a determination of the regularity and legality of the proceedings below cannot be made. As the Delaware Supreme Court noted in *New Castle County Council v. BC Development Associates*, "when Council makes a rezoning decision without establishing the basis of its action, it thwarts the ability of a court to provide effective review."[29] Likewise, in this case, the record below is not sufficient for review and the City must conduct a new hearing to provide an adequate record. [30]

## CONCLUSION

For the foregoing reasons, upon review of 330's writ of certiorari, this matter is REMANDED to the City for a new hearing on 330's application.

**IT IS SO ORDERED**.

---

[29] 567 A.2d 1271, 1276 (Del. 1989).

[30] *See, e.g., Tate v. Miles*, 503 A.2d 187, 190-191 (Del. 1986) ("Appellants have argued that if this court decides that Council must give reasons for its rezoning decisions, this case should be remanded to allow Council to supply its reasons. This proposal suggests a dubious method of *ad hoc* after-the-fact legislation. The hearing process must, rather, being anew.").