## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ROBERT COLBURN and
DOROTHY COLBURN,

          Appellants,

    v.

BOARD OF ADJUSTMENT OF
THE CITY OF NEW CASTLE, et al.,

          Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N18A-04-007 CEB

Submitted: August 6, 2019
Decided: October 8, 2019

## MEMORANDUM OPINION

*Petition for Writ of Certiorari and Appeal of Decision of Board of
Adjustment of the City of New Castle*
**REVERSED and REMANDED**

Josiah Wolcott, Esquire, CONNOLLY GALLAGHER LLP, Attorney for
Appellants.

Daniel Losco, Esquire and Geena Khomenko George, Esquire, LOSCO &
MARCONI, P.A., Attorneys for Appellees.

**BUTLER, J.**

## INTRODUCTION

This matter has come to the Court by way of a request for a Writ of Certiorari and Appeal of a Decision of the Board of Adjustment of the City of New Castle. The factual and procedural history is somewhat unusual, so I will save the details here and say only that, after due consideration, the Court is not satisfied that the matter before the Court is a justiciable controversy. Even if it were, the Board of Adjustment's decision upholding the Building Official's unilateral opinion is bereft of an articulated rationale that enables this Court to conduct any meaningful review. The Court therefore has little choice but to reverse the decision of the Board of Adjustment.

## FACTUAL AND PROCEDURAL BACKGROUND

In the historic district of Old New Castle, one will inevitably come upon Second Street, with quaint houses fronting both sides of the street. Two such houses are at the center of this dispute: 153 and 155 Second Street, owned by the Colburns and the Chaumps respectively.[1] Standing at the back door of the Chaump or Colburn houses would yield a view across a grassy field that extends to The Strand – Old New Castle's signature street along the Delaware River – and beyond to New Jersey.[2]

---

[1] *See* D.I. 10 (Transcript of New Castle City Board of Adjustment meeting, at p. 1).
[2] *See* D.I. 9 in *Chaump v. Board of Adjustment*. C.A. N17A-08-001 CEB (record and transcript of proceedings) Ex. 3, 10, 17, 20, 21; *see also* D.R.E. Rule

1

There are property lines that partition the expanse of green.[3] At the point the legally described backyards end, there is a 20-foot wide, unimproved right of way running across both backyards.[4] Beyond the 20-foot right of way are 2 rectangular strips of land, the same width as the homeowners' lots, deeded to these same homeowners, but referred to as "unimproved building lots."[5] They are not part of the same tax parcel as the residences, but to the naked eye, it all looks like a backyard field and is routinely mowed and cared for by the homeowners.[6]

As homeowners will, the Chaumps at 155 Second Street decided they wanted to build an addition to the back of their house.[7] Because this is a historic district, apparently changing anything about an exterior is no mean feat. It took seven trips to the Historic Area Committee to get approval of the plans before the Building Official would issue a permit.[8] Then, after construction had begun, the Chaumps learned that the rear porch of the ongoing project would protrude into a 25-foot

---

202(d)(1)(C) (Court may take judicial notice of the records of other proceedings before the Court).

[3] See D.I. 10 at p.4, 5.

[4] See D.I. 9 in *Chaump v. Board of Adjustment.* C.A. N17A-08-001 CEB at Ex. 3, 5; *see also* D.I. 10, p. 3, 4.

[5] D.I. 15 at 1.

[6] *Id.*; D.I. 10 at 5.

[7] See D.I. 9 in *Chaump v. Board of Adjustment.* C.A. N17A-08-001 at p. 1–6.

[8] D.I. 9 in in *Chaump v. Board of Adjustment.* C.A. N17A-08-001 CEB, Chaump hearing transcript p. 7.

setback requirement at the back of the property.[9] The Chaumps stopped construction and sought a variance from the zoning limitation before the New Castle City Board of Adjustment.[10]

The Board of Adjustment consists of three members: the City Solicitor, the City Engineer and the Mayor.[11] In the zoning variance proceeding, however, the President of the city council sat in place of the Mayor, who was not part of the proceeding.[12]

All sides were well aware that building out into the setback area would interfere with the "viewscape" of the Delaware River for the Colburns next door, a fact that did not set will with the Colburns. Much of the hearing and argument was taken up with the extent of the visual interference, the precedent that would be set generally and the settled expectations of others, like the Colburns, that had not sought a variance.[13] This, one supposes, it to be expected in such a hearing.

One issue raised during the zoning hearing would come back to haunt the later proceedings. According to the written record of the zoning hearing, "Discussion ensued with the Building Official Jeff Bergrstrom as to whether the 20-foot wide

---

[9] Mr. Chaump referred to receiving a building permit despite a zoning violation as "obviously oversights that occurred." Id. at p. 6.
[10] *Id.*
[11] D.I. 10, Colburn Transcript at p. 1.
[12] D.I. 10, Chaump transcript at p. 1.
[13] *Id.*

3

"alley" is really a paper "street" – if so, the Property has two "front" yards and no rear yards."[14] There being no setback requirement for a front yard facing a street, the argument goes, the Chaumps could build all the way back to the rear property line, unrestricted by any setback requirement.

Apparently, this was the first time the issue was raised and the City Solicitor, sitting on the Board of Adjustment, said that determining whether the 20-foot right of way was a street or an alley would require "significant research" and was beyond the scope of the zoning variance sought in the application.[15] Ultimately, the Chaumps' requested zoning variance was turned down by the Board of Adjustment.

Alas, this is not an appeal of the zoning board's decision. Rather, after the unsuccessful run at a zoning variance, the Chaumps went back to the Building Official and brought their best arguments why the Building Official was right during the zoning hearing and the "alley" really was not really an alley at all, but a "street" and the 25-foot setback requirement did not apply.[16] Since the Chaumps had "streets" at either end of the property, they could build to the lot line on either or both sides. This unilateral effort by the Chaumps with the Building Official yielded a better result than they got at the zoning hearing. The Building Official opined in writing that the right of way behind the houses was a street and, therefore, the

---

[14] D.I. 9 in *Chaump v. Board of Adjustment*. C.A. N17A-08-001, Ex. 23 at p. 4.
[15] *Id.*
[16] *See* D.I. 10 at p. 12.

4

Chaumps need not comply with the 25-foot setback requirement.[17]  Next door, the Colburns, thinking the dispute was over after successfully fighting off the zoning variance before the Board, learned that the Chaumps had effectively won with the Building Official what they had lost before the Board of Adjustment.  Upset with the conclusion of the Building Official, the Colburns appealed the decision to the City's Board of Adjustment – the same board that denied the Chaumps the zoning variance.[18]

As noted earlier, the Board of Adjustment for the City of New Castle consists of the City Solicitor, the City Engineer and the Mayor.[19]  This time around, however, the City Solicitor recused himself from ruling, announcing that he had counseled the Building Official in making his decision.[20]  Thus, the Board for this hearing was two members: the Mayor, who was present (and not the city council president) and the City Engineer.[21]

The Board took substantial testimony, from counsel, from the Colburns, as well as several residents of the neighborhood.[22]  In addition, various maps and historical records concerning the property were introduced.[23]

---

[17] *Id.* at Ex. 3.
[18] D.I. 10 at 2.
[19] *Id.* at 1.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at Colburn transcript, D.I. 10 Ex. 5–9.

We might pause here to discuss the substance of the arguments for and against calling the right of way a street versus an ally, but the merits matter little to the Court's resolution of this dispute and the Court will therefore demur.

What is apparent from the record is that at the conclusion of the testimony, the now two member Board deliberated.[24] The City Engineer, believing the Building Official had erred in concluding the right of way was a street, moved to overturn the Building Official's finding.[25] In what can only be described as a prophetic comment, the recused City Solicitor told the Engineer, "I think you need to state on the record the specific reasons why.[26] You said that Mr. Wolcott's arguments, or at least some were compelling, but I think you need to create on the Record what grounds to your decision are."[27] The Engineer then proceeded to articulate his *ratio decidendi,* pointing to specific evidence.[28]

The motion then turned to the Mayor and he explained his vote thus: "Both sides present intelligent arguments. I believe, however, that we should accept the opinion of the City Building Inspector, the City Building Official. I believe we should call it a street."[29] The City Solicitor, rather than calling upon the Mayor to

---

[24] *See* D.I. 10.

[25] D.I. 10 at p. 21.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at p. 22.

6

articulate his reasons for his decision as he had for the City Engineer, announced that because the vote was a one-one tie, the motion to overturn the Building Official's conclusion did not pass.[30] The decision of the Building Official thus became the final word on the subject.[31]

Finally, as if the record were not confusing enough already, at oral argument, counsel for the Colburns advised the Court that since these hearings, the Chaumps have acceded to the setback requirement coming out of the zoning hearing and the home addition has been completed, within the 25 foot setback. According to the Colburns, the issue may nonetheless raise its head again and, having filed their appeal, they would like a Court ruling that the Building Official is in error in his conclusion that the right of way is a street.[32]

## STANDARD OF REVIEW

The Court is bound to affirm administrative findings provided "substantial evidence exists on the record to support a zoning board's findings of fact and to correct any errors of law."[33] "Substantial evidence means such relevant evidence as

---

[30] *Id.*

[31] *Id.*; *see also* Colburn, D.I. 10, Ex. 9 (formal Notice of Decision by the Board).

[32] D.I. 15, Appellants Opening Brief at 20.

[33] *Mackes v. Bd. of Adjustment of Town of Fenwick Island*, 2007 WL 441954 *3 (Del. Super. Ct. February 8, 2007)(emphasis added) citing *Hellings v. City of Lewes Bd. of Adjustment*, 1999 WL 624114 (Del. July 19, 1999).

a reasonable mind might accept as adequate to support a conclusion."[34] "Statutory interpretation is ultimately the responsibility of the courts" and a reviewing court will not defer to an agency's interpretation as correct merely because it is rational or not clearly erroneous.[35]

"A decision will be reversed for irregularities of proceedings if the lower tribunal failed to create an adequate record to review.[36] "It is settled law that a quasi-judicial tribunal must state the basis for its decision in order to allow judicial review."[37]

## LEGAL ANALYSIS

At the risk of repetition, this is not a controversy over whether the Chaumps may build an addition to their home beyond the zoned setback requirement. They have apparently accepted the zoning decision of the Board of Adjustment that they must abide the setback requirements and have proceeded to complete their renovation project. Indeed, the Chaumps are not even parties before the Court, having abandoned their appeal of the zoning order.[38] Rather, the Colburns are

---

[34] *Mackes v. Board of Adjustment of Town of Fenwick Island*, 2007 WL 441954 *3 citing *Holowka v. New Castle County Bd. of Adjustment*, 2003 WL 21001026 at *11 (Del. Super. Ct. Apr.15, 2003).

[35] *Pub. Water Supply Co. v. DiPasquale*, 735 A.2d 378, 382–83 (Del. 1999).

[36] *Vondrasek v. Board of Adjustment of the City of Wilmington*, 2017 WL at *1 citing *Christiana Town Ctr., LLC v. New Castle Cty.*, 865 A.2d 521 (Del. 2004).

[37] *Reise v. Board of Bldg. Appeals of City of Newark*, 746 A.2d 271, 274 (Del Supr. 2000) citing *Tate v. Miles*, 503 A.2d 187 *Del. Supr. 1986).

[38] D.I. 26 in *Chaump v. Bd of Adjustment*, N17A-08-001.

pressing this appeal because they do not believe the Building Official's decision that the right of way behind their house is a street is correct and the Building Official's decision could cause further aggravation to them down the road. While it is certainly true that the street designation could conceivably have some legal consequence at some point in the future, the Colton's have not articulated a specific or immediate harm to them flowing from the Building Official's ruling.

## A. This dispute is not a justiciable controversy

One of the primary reasons cited by the Building Official in support of his decision that the right of way was a street was that the unimproved building lots, facing the right of way on the other side of the backyards of the Second Street homes, needed to have a "street" to face. If the right of way were considered an "alley," homes built on the unimproved lots would be landlocked, an unacceptable possibility.[39] The City Engineer, in voting to overrule the Building Official, found this to be a false dilemma: "there are other situations in New Castle, where houses are accessed from an alley, and even if there weren't, there would be relief from those three landlocked parcel owners to come and seek relief such that they could develop their lots."[40]

---

[39] D.I. 10 at 18.
[40] *Id.* at 21.

Thus, the dispute before the Court concerns whether a right of way is a street or an alley, but no party before the Court has anything more than a curiosity interest in the outcome. There is no building application, zoning variance or permit request in the balance. Indeed, there was none pending before the Building Official when he pronounced that the right of way was a street save for the Chaumps' request that he ponder the matter. Delaware courts do not "entertain suits seeking an advisory opinion or an adjudication of hypothetical questions . . . ."[41] It is at least possible that the Declaratory Judgment Act might have been available to resolve this dispute, but even that is "not to be used as a means of eliciting advisory opinions from the courts."[42]

The residence addition in question is complete; the Chaumps have forsaken their appeal.[43] The only parties with an interest in this dispute have no direct financial stake in the outcome. In the fullness of time, perhaps a builder will seek a ruling on whether the unimproved lots may be improved and if so, what setback requirement applies. That party will have an interest in this question.

---

[41] *Rollins International, Inc. v. International Hydronics Corp.,* 303 A.2d 660, 662 (Del. Supr. 1973).
[42] *Ackerman v. Stemerman,* 201 A.2d 173, 175 (Del. Supr. 1964).
[43] D.I. 17 at 18.

10

Even if the Court were to agree that the thin thread of harm alleged by the Colburns was sufficient to create a justiciable controversy, there is a second reason this record is ill suited for review by the Court.

**B.    The Board of Adjustment failed to articulate its rationale**

It is obvious that the issue before the Board of Adjustment was not free from doubt, regardless of the ultimate decision.  As a reviewing Court, my duty is to consider the deliberative process of the Board and accord it preclusive effect, so long as the Board demonstrates that it has in fact, deliberated and its decision is supported by "substantial evidence."[44]  Even this deferential standard requires that the record demonstrate that the Board show the basis on which it acted.[45]  As the Supreme Court said in *Phelps Dodge Corp.*,[46] "the administrative process will best be vindicated by clarity in its exercise."[47]

The City Engineer recognized the necessity for clarity and he articulated his rationale for reversing the decision of the Building Official.[48]  The Mayor did not do so when he said simply that he thought he would affirm the decision of the Building

---

[44] *Kreshtool v. Delmarva Power & Light Co.*, 310 A.2d 649, 652 (Del. Super. Ct. 1973).

[45] *Id.* at 655 ("It must be evident from the decision and from the record below that the Board's decision was based on a consideration of the relevant factors."); *see also Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 196 – 197 (1941); *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981).

[46] *Phelps Dodge Corp.*, 313 U.S. at 197.

[47] *Id.*

[48] D.I. 10 at 21.

Official. Neither the Mayor nor the City Solicitor provided an explanation, despite taking substantial public testimony at the hearing.[49]

The City argues that the Mayor did "explain" his rationale by endorsing the Building Official's rationale that had been extolled in some detail at the hearing.[50] The City likens the Mayor's ruling to a summary affirmance by an appellate court for the "reasons cited by the Court below."[51] The Colburns counter that the Board of Adjustment hearing was *de novo* and in any event, a prior decision by the Building Official does not relieve the administrative agency from making its own findings.[52]

The City's argument loses much of its attraction when we consider that unlike many boards and agencies in administrative law, the Building Official did not engage in a fact finding hearing with the usual attendant due process protections. There is no evidence in the record that the Colburns even knew that the Chaumps had approached the Building Official with their novel argument. Thus, there is a fair question whether the Building Official's decision ought to receive any persuasive weight when brought to the Board of Adjustment. Rather than a thoughtful decision based upon competing arguments, his is a unilateral agreement with the Chaumps based upon the Chaumps own arguments. Certainly, fact-findings made after

---

[49] *Id.*
[50] D.I. 16 at 5.
[51] *Id.* at 15.
[52] D.I. 17 at 8, 9.

12

"notice and an opportunity to be heard" are entitled to at least some modicum of respect on further review, the City cannot say that the Building Official's findings enjoy that status in this record.

Moreover, the Board of Adjustment did not sit in appellate review. Rather, it took a whole new round of testimony concerning the history of the property, complete with neighbors who remember it back when and historic maps of the area. To dismiss the new testimony with a simple conclusion that "I believe we should call it a street" rightly leaves the participants in the inquiry with the question "Why?"[53] The Mayor's conclusion may serve well when he acts in his executive capacity: a Mayor's job is to execute. But when serving in a quasi-judicial capacity, it is important that his rationale be articulated; the essence of the judicial function. When our jurisprudence simply answers questions without explaining why, it undermines our citizens' confidence in the judicial or quasi-judicial process and such conclusory opinions are subject to accusations of caprice and whimsy. We must be particularly sensitive to this criticism when the deliberative body is not law-trained, lives in the community affected, and serve in political office.

There is more to criticize about the procedural irregularities in this dispute. Exactly what authority was the Building Official acting under when he unilaterally opined that the right of way was a "street?" If his opinion is without legal authority,

---

[53] D.I. 10 at 22.

13

what is the consequence when the Board of Adjustment nonetheless undertakes to affirm it? When a board takes new testimony, is its review of the Building Official's findings *de novo*, or some appellate standard?

Any of these issues could potentially prove fatal to the Court's review of this appeal. Suffice it to say that the Board of Adjustment's ruling cannot stand. Perhaps there will come a time, after appropriate pleadings, that the Court will have to rule upon the street vs. alley controversy behind Second Street in Old New Castle. The Court can only hope that when that time comes, it will be upon an appropriate record developed by real parties in interest and vetted before a Board with legal authority to act that articulates its opinion with a reviewable rationale.

## CONCLUSION

Based upon the foregoing, the decision of the New Castle City Board of Adjustments is **REVERSED AND REMANDED** for further proceedings not inconsistent with this opinion.

**IT IS SO ORDERED**.

Judge Charles E. Butler

14