# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| REED FARMS, LLC, a Delaware limited liability company, | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | C.A. No. 2021-0552-BWD |
| SUSSEX COUNTY COUNCIL, a political subdivision of the State of Delaware, | ) ) ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION RESOLVING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Date Submitted: June 11, 2025
Date Decided: July 18, 2025

David C. Hutt, Michelle Bounds, MORRIS JAMES LLP, Georgetown, DE; *Attorneys for Petitioner Reed Farms, LLC*.

David N. Rutt, MOORE & RUTT, P.A., Georgetown, DE; *Attorneys for Respondent Sussex County Council*.

**DAVID, V.C.**

The petitioner in this action, Reed Farms, LLC, seeks a determination that Sussex County Council acted in an arbitrary and capricious manner when it rejected an application to amend the County's future land use map to change the designation of a parcel of land northwest of Milton from a "low density area" to a "developing area." In denying the application, County Council explained why the subject property should not be designated as a "industrial area" but did not address why the requested "developing area" designation was inappropriate. Because County Council answered the wrong question when it denied the application, its decision was arbitrary and capricious and cannot stand. Judgment is entered for the petitioner. The petitioner's application must be resubmitted to County Council for a new public hearing and a new vote.

## I. BACKGROUND

### A. The Parties, The Property, And The Plan

Reed Farms, LLC ("Petitioner"), a Delaware limited liability company, owns 67.31 acres of real property located on the south side of Delaware Route 16 and west of Delaware Route 30, northwest of the town of Milton (the "Property").[1] *See* Appendix, Ex. D.

---

[1] The Property is located at 14888 Gravel Hill Road, Milton, Delaware 19968, and identified as Tax Map Parcels 235-13.00-29.00 and 29.01, and 235-14.00-570.00. App. to Pet'r Reed Farms, LLC's Opening Br. in Supp. of its Mot. for Summ. J. [hereinafter Appendix], Ex. A at 1, Dkt. 17.

1

Sussex County Council ("County Council") is the governing body of Sussex County, a political subdivision of the State of Delaware responsible for reviewing and deciding whether to approve applications to rezone properties that are within Sussex County but outside the jurisdiction of other zoning authorities.

In 2018, County Council adopted the Sussex County Comprehensive Plan (the "Plan"), a 280-page document that "serves as the standard for how development occurs and how land use is governed in a community over a long-term period." SUSSEX CTY. COMPREHENSIVE PLAN (2018) [hereinafter Plan]; *Comprehensive Plan*, SUSSEX CTY. DEL., https://sussexcountyde.gov/comprehensive-plan (last visited July 18, 2025). While "County Code regulates the use of land and creation of lots and associated improvements," the Plan "acts as a policy guide for future development and decision-making." Plan § 1.5. The Plan attaches a Comprehensive Zoning Map of Sussex County ("Zoning Map") "that divides the unincorporated areas of the County into different zoning districts." *Id.* § 1.5.1. Each zoning district "permits a set of activities and establishes a maximum density of development." *Id.*

The Plan contemplates a Future Land Use Plan (the "Land Use Plan") that "designates which parts of the County are to be considered growth areas" and guides the County's zoning regulations. *Id.* § 4.4. The Plan also contemplates a Future Land Use Map ("Land Use Map") "to help direct the location and type of new development." *Id.* § 4.5. The Land Use Map identifies land use classifications in

2

eleven "areas" throughout Sussex County, including "Rural Areas" and "Growth Areas" listed from lowest to highest density. *Id.* § 4.5–1. Rural Areas are designated:

- Low Density Areas
- Protected Lands
- Agricultural Preservation Districts
- Agricultural Preservation Easements

*Id.* Growth Areas are divided into:

- Municipalities
- Town Centers
- Developing Areas
- Existing Development Areas
- Coastal Areas
- Commercial Areas
- Industrial Areas

*Id.*

Because the Plan "is a guide for the future use of land, the . . . [Z]oning [M]ap must be consistent with the uses and intensities of uses provided for in the [Land Use Plan]" and "future rezonings should . . . generally be consistent with the [Land Use Plan]." *Id.* § 4.5. When the County reviews a land use proposal, it is "reviewed on its own merit to determine if the proposal is consistent with the [Land Use Map] and does not have a negative impact on the surrounding area or the County in general." *Id.* Pertinent to the dispute here, in Low Density Areas,

> [t]he primary uses envisioned . . . are agricultural activities and homes. Business development should be largely confined to businesses

3

addressing the needs of these two uses.  Industrial and agribusiness uses that support or depend on agriculture should be permitted.  The focus of retail and office uses in Low Density Areas should be providing convenience goods and services to nearby residents.  Commercial uses in these residential areas should be limited in their location, size and hours of operation.  More intense commercial uses should be avoided in these areas.  Institutional and commercial uses may be appropriate depending on surrounding uses.

*Id.* § 4.4.3.  The zoning districts permitted within Low Density Areas include:

- Agricultural Residential District (AR-1)
- Business Community District (B-2)
- Medium Commercial District (C-2)
- Marine District (M)
- Institutional District (I-1)

*Id.* § 4.5–2.  In Developing Areas,

[a] range of housing types are appropriate . . . , including single family homes, townhouses, and multi-family units.  In selected areas and at appropriate intersections, commercial uses should be allowed.  A variety of office uses would be appropriate in many areas.  Portions of the Developing Areas with good road access and few nearby homes should allow for business and industrial parks.  Appropriate mixed-use development should also be allowed.  In doing so, careful mixtures of homes with light commercial and institutional uses can be appropriate to provide for convenient services and to allow people to work close to home.

*Id.* § 4.4.2.1.  The zoning districts permitted within Developing Areas include:

- Agricultural Residential District (AR-1)
- Medium Density Residential District (MR)
- General Residential District (GR)
- High Density Residential District (HR-1 & HR-2)
- Business Community District (B-2)
- Business Research (B-3)
- Medium Commercial District (C-2)

4

- Heavy Commercial District (C-3)
- Planned Commercial District (C-4)
- Service/Limited Manufacturing District (C-5)
- Institutional District (I-1)
- Marine District (M)
- Limited Industrial District (LI-1)
- Light Industrial District (LI-2)
- Heavy Industrial District (HI-1)

*Id.* § 4.5–2. And in Industrial Areas,

> lands [are] devoted to concentrations of larger industrial uses including heavier industry, light industry, warehousing, and flex space. Appropriate development in these areas could take the form of conventional industrial parks or planned business parks with a unified design that incorporate a combination of light industry and other business uses. Large, more intensive stand-alone industrial uses should also be directed to these areas.

*Id.* § 4.4.2.1. The zoning districts permitted within Industrial Areas include:

- Agricultural Residential District (AR-1)
- Limited Industrial District (LI-1)
- Light Industrial District (LI-2)
- Heavy Industrial District (HI-1)
- Service/Limited Manufacturing District (C-5)

*Id.* § 4.5–2.

### B. Petitioner Applies To Rezone The Property From Agricultural To Heavy Industrial Use.

The Property is located in a Low Density Area and is zoned "AR-1" for "Agricultural Residential" use. Appendix, Ex. A. On March 16, 2020, Petitioner submitted a Planning & Zoning Commission Application (the "Application") to the

5

Sussex County Planning and Zoning Department, requesting to amend the Zoning Map to rezone the Property to "HI-1" for Heavy Industrial use. *Id.*, Ex. A.

On July 14, 2020, County Council introduced an ordinance, designated **C/Z 1923**, that would amend the Zoning Map to rezone the Property from AR-1 for Agricultural Residential use to HI-1 for Heavy Industrial use, as requested in the Application. *Id.*, Ex. D.

In addition, because the Property is located in a Low Density Area where HI-1 Heavy Industrial use is not permitted, on November 17, 2020, County Council introduced a second ordinance, designated **Ord. 20-07**, that would change the Property's designation on the Land Use Map from a Low Density Area to a Developing Area. *Id.*, Ex. E.

### C. The Zoning Commission Recommends Approval Of C/Z 1923 And Ord. 20-07.

On December 17, 2020, the Sussex County Planning and Zoning Commission ("Zoning Commission"), a five-member panel that acts as an advisory board to County Council on change of zone and conditional use requests,[2] held a public hearing to consider Ord. 20-07 and C/Z 1923. *Id.*, Exs. P, Q. After presentations

---

[2] "[T]he role of the Zoning Commission is informative; its recommendations do not bind the elected members of the Council in considering rezoning applications." *Cain v. Sussex Cty. Council*, 2020 WL 2122775, at *3 (Del. Ch. May 4, 2020) (citing Sussex Cty. C. § 115–216).

from counsel and public comment, the Zoning Commission voted to leave open the record for Ord. 20-07 and defer action on C/Z 1923. *Id.*, Ex. Q at 8.

On February 25, 2021, after a public hearing, the Zoning Commission voted unanimously to recommend approval of Ord. 20-07 (amending the Property's designation from a Low Density Area to a Developing Area) for the following reasons:

One, the parcel is 67.31 acres of land. The property is currently zoned AR-1.

Two, the parcel is designated as being in the Low Density Area according to the Future Land Use Map.

Three, properties to the east of this parcel are entirely within the Developing Area. Properties to the south of this parcel are designated as Industrial. This revision to the Developing Area on the . . . Future Land Use Map is consistent with the surrounding map designations.

Four, the property has extensive frontage on Route 30 which is designated as a truck route by the State.

Five, this revision to the Future Land Use Map will not adversely affect neighboring properties, area roadways, or future land-use planning in the area.

Six, the parcel is in close proximity to the intersection of Routes 30 and 16. Given its proximity to this intersection and other properties that have the Developing Area or Industrial classification already, this map amendment is appropriate.

Seven, this property has railroad service available to it. This map amendment promotes the transportation goals in the Sussex County Land Use Plan which states in Section 13.2.2 that the County's goods movement (freight) network is an integral component of the transportation network as well as the economy. The main element of

7

the freight network is the roadway system which carries trucks, motor freight. The Plan also states that one way of reducing truck impacts on area roadways is to shift more freight to rail, although opportunities to do that are limited. This site presents an opportunity to achieve this goal. This is also supported in the Comprehensive Plan by Goal 13.5, Objective 13.5.1 and the Strategies attached to this Goal and Objective.

This revision of the Future Land Use Map is appropriate given the particular circumstances involved at this location. When several factors like these exist, the consideration and approval of an amendment to the Future Land Use Map is appropriate.

*Id.*, Ex. B at 2–4.

The Zoning Commission then voted to recommend approval of C/Z 1923 (rezoning the Property from AR-1 for Agricultural Residential use to HI-1 for Heavy Industrial use) for the following reasons:

One, the location is appropriate for HI zoning. With the amendment to the Future Land Use Map in the Comprehensive Plan, the property is in a Developing Area and it is adjacent to an Industrial Area according to the Map.

Two, the properties to the north and east of the site are currently zoned C-1 and HR, and the property to the south is zoned LI-2.

Three, this site is near the intersection of Routes 30 and 16. Route 30 is designated as a truck route, and Route 16 is a major collector. This is an appropriate location for HI zoning.

Four, the site is adjacent to an existing rail line accessing the property. This makes this location appropriate for industrial zoning. The rezoning also promotes the transportation goals of the Sussex County Land Use Plan. The Plan states that truck traffic on area roads can be reduced by shifting more freight to rail, although opportunities to do that are limited. This use of rail service for the movement of freight is supported and encouraged by the Goals, Objectives and Strategies of The Mobility Element of the Comprehensive Plan.

8

Five, HI zoning is appropriate, since the Zoning Code states that the purpose of the district is to provide for a variety of industrial operations but to restrict or prohibit those industries which have characteristics likely to produce serious adverse effects within or beyond the limits of the district.

Six, the rezoning shall promote the local economy and will create jobs in the area for Sussex County residents.

Seven, while HI zoning has many possible uses, there are only a limited number of uses that are permissible without a further hearing in front of the County Board of Adjustment.

Eight, under the HI zoning, if a possible use is potentially hazardous or if there's any doubt as to whether it is potentially hazardous, there will be another public hearing on the particular use before the Board of Adjustment. The Board of Adjustment cannot approve the particular use unless it finds that the public's health and welfare will be protected and that there are safeguards to protect area waters, property, and people.

Nine, HI zoning with the safeguard of having further hearings limiting potential uses will not adversely affect the neighboring or adjacent properties.

Ten, any further use and development of the property will be subject to Site Plan Review by the Sussex County Planning and Zoning Commission.

*Id.*, Ex. B at 4–7.

### D. County Council Votes Against Ord. 20-07 And C/Z 1923.

On March 2, 2021, County Council held a public meeting to consider Ord. 20-07 and C/Z 1923. *Id.*, Exs. H, R. At the conclusion of that meeting, County Council

9

deferred Ord. 20-07 and C/Z 1923 for further consideration. *Id.*, Ex. C at 2:14–18; *id.*, Ex. H.

On April 20, 2021, County Council held a second public meeting to consider Ord. 20-07 and C/Z 1923. *Id.*, Ex. C. At the meeting, Councilwoman Cynthia Green and Councilman Mark G. Schaeffer voted to approve Ord. 20-07. *Id.*, Ex. C at 3:9–24. Councilman Douglas B. Hudson voted against Ord. 20-07 for the following reasons:

> [T]he Future Land Use Map is a guide for the way in which Sussex County wants to plan for future development; it is intended to direct future land use to the appropriate areas. It's also intended to provide existing property owners with some expectation about how lands around them may be zoned or used.
>
> While the property to the south of this site is designated as Industrial Area according to the Future Land Use Map in our Comp. Plan, this is an isolated designation; everything around that relatively small parcel is designated as being in a Low Density Area in the Future Land Use Map.
>
> According to our Plan, the Low Density Area is envisioned as being used for agricultural activities and homes with business uses addressing those agricultural and residential needs. Our Plan also states that more intense uses should be avoided in these areas. That contradicts the purpose of the Industrial Area which should be devoted to larger industrial uses including heavier industry, light industry, warehousing, and flex space.
>
> The Comprehensive Plan in the Future Land Use Map is a planning tool for existing and future development. People and businesses rely on it so they know what to expect regarding future possible development around them. I do not support an amendment for the least-intensive area designation to the most-intensive area designation in our Comp.

10

Plan; such a significant change undermines any predictability of the Comp. Plan and its Future Land Use Map.

Our Comprehensive Plan states, "It is important that commercial and industrial development occurs in a scale, intensity, and distance appropriate to residential neighborhoods." Our Future Land Use Map did not designate this site as part of an Industrial Area. Because of the proximity and distance to existing Low Density Residential neighborhoods and land zoned for future High Density Residential development, this is not an appropriate location to change the Low Density designation to an Industrial Area in our Future Land Use Map. The scale and intensity of what the Industrial Area would allow is not consistent with the nearby residential zonings and uses.

I vote to deny the application to change this [P]roperty designation to Industrial Area.

*Id.*, Ex. C at 4:4–6:6. Vice President John Rieley and President Michael Vincent voted against Ord. 20-07 for the reasons cited by Councilman Hudson. *Id.*, Ex. C at 6:9–14. By a vote of three to two, Ord. 20-07 was denied.

County Council then considered C/Z 1923. *Id.*, Ex. C at 6:16–23. Vice President Rieley voted against C/Z 1923 for the following reasons:

[B]ecause the Future Land Use Map was not amended so this site is . . . not within the Industrial Area, the site remains designated as being within the Low Density Area on the map. Table 4.5-2 of our Comprehensive Plan states that HI-1 Heavy Industrial Zoning is not appropriate in a Low Density Area. Although Planning and Zoning recommended approval of this application to HI-1 Zoning, I have several concerns about it. At the outset, I believe that it is important to have land available for industrial and commercial uses in Sussex County, but the land must be appropriately planned and located. I do not believe that this particular site is appropriate for HI-1 Heavy Industrial Zoning that has been requested.

11

It's correct that the property nextdoor is currently zoned HI-1, but that property is less than half the size of what is proposed here. The existence of this relatively small and isolated area of HI-1 zoning is inconsistent with the size and scale of what is proposed. The existence of this much smaller HI-1 zoning nextdoor also does not require us to up-zone this much larger property to HI-1.

Although the Applicant has requested HI-1 Heavy Industrial Zoning, there was no clear explanation in the record why HI-1, which is the most intensive zoning district in Sussex County, was requested. It is not always necessary for an applicant to provide such a specific intended use for rezoning, but there should be some clear justification as to why the most intensive HI-1 zoning is needed here. I'm not satisfied as to why HI-1 zoning is appropriate at this location or why HI-1 was needed over the less-intensive zoning districts that still allow many different types of residential businesses, commercial warehousing, and even some industrial uses. The record does not sufficiently support HI-1 Heavy Industrial Zoning for this location.

Unlike every other zoning classification in Sussex County, HI-1 zoning would permit a 125-foot tall building; the next tallest height that's permitted in Sussex County is 73 feet lower than that, than what could be built in an HI-1. This is not compatible with surrounding uses, including residential uses.

The property is surrounded by AR-1 zoning to the west, AR-1 land in ag. preservation to the north, a small area of land that is zoned C-1 at the northeast, C-1 and HR-1 land to the east, and an existing AR-1 Low Density subdivision to the east.

While there is some limited HI-1 zoning to the south, that is an isolated area of HI-1 zoning that itself is completely surrounded by land that is zoned AR-1 under a Low Density Area designation. And, again, the adjacent HI-1 zoning is less than half the size of this rezoning application. Based on these surroundings, the site is not appropriate for an up-zoning to the most intensive zoning district in our zoning code.

The Commission recommended approval based in large part on the property's proximity to Routes 30 and 16, which are truck routes, and also the railroad that is next to the property. The existence of these

12

factors [does not] require us to rezone property to HI-1 zoning. Keeping it as AR-1 is appropriate or there may be other less intensive zoning districts that would benefit from being in this location without the impacts that could come along with HI-1 zoning. The Commission recognized that our Comprehensive Plan's mobility element encourages the use of rail service when possible, and it recommended that the site is appropriate for HI-1 Zoning because it is next to a rail line. Rail service is certainly a factor to consider, but the existence of a nearby railroad does not by itself justify a rezoning from AR-1 to HI-1 Heavy Industrial; there are other factors that must be considered. There are also other zoning districts which may equally benefit from rail service but are more compatible with their proposed location.

The Commission noted that there are a limited number of permitted uses in HI-1 and that, "potentially hazardous uses can only be permitted after approval by our Board of Adjustment." This is certainly true, however, any of the permitted uses could be built to 125 feet; this could include a 125-foot tall hotel, data processing center, office building and all of the issues that would come from such high intensity development. They would be the tallest hotels or office buildings in Sussex County than the location that is otherwise mainly rural. Or there could be uses such as adhesive plants, galvanizing or plating factories, edible oil, fat, shortening factories, paper factories, petroleum storage facilities, or factories that make wallboard and paster, building materials, insulation, composite flooring, et cetera, and each one of these are more than— each one of these or the more than 30 other permitted uses could be as tall as 125 feet in the air. This is unique to the HI-1 Zoning District, which is why I do not believe HI-1 is appropriate for this location and the uses that surround it.

There was significant opposition to this rezoning particularly from the residents of Pemberton, which is an existing AR-1 Low Density Residential subdivision across Route 30 from this site. Those property owners purchased with the knowledge that this land was zoned AR-1; there was no guarantee that this land would remain undeveloped or remain as AR-1, however, there's a reasonable expectation that the land would be zoned and used in a way that is compatible with this existing Low Density Residential use. Up-zoning this site to HI-1 Heavy Industrial is not compatible with the Low Density Pemberton subdivision.

13

> The rezoning does not meet the purpose of the Zoning Ordinance, since it does not promote the orderly growth of Sussex County. It would establish a fairly large area where intensive industrial use could occur in a largely agricultural and residential area.

*Id.*, Ex. C at 9:3–14:8. Adopting Vice President Rieley's reasons, President Vincent, Councilwoman Green, Councilman Hudson, and Councilman Schaeffer each voted against C/Z 1923. *Id.*, Ex. C at 14:15–15:11. C/Z 1923 was, therefore, unanimously denied.

### E. This Litigation

On June 24, 2021, Petitioner initiated this action through the filing of a Petition for Declaratory Judgment (the "Petition"), seeking a declaration that County Council's denial of Ord. 20-07 was arbitrary and capricious, in that it was not supported by substantial evidence on the record of the public hearing. Dkt. 1. After County Council answered the Petition, the action sat dormant for over a year until, on August 9, 2022, the Court directed the parties to file a status report and advised that if no report was filed, the case would be dismissed for lack of prosecution. Dkts. 6–7. The parties filed a status report on September 9, and the case was reassigned to me on January 10, 2023. Dkts. 8, 13.

14

The parties then cross-moved for summary judgment,[3] and the Court scheduled oral argument for April 12, 2024. Dkt. 24. At Petitioner's request, oral argument was continued, and the parties were directed to contact chambers to reschedule. Dkt. 26. They failed to do so, and on September 5, the Court again directed the parties to reschedule argument or file a joint letter advising that they wished to submit the motions without argument. Dkt. 27. Nine months later, on June 11, 2025, the parties finally submitted a letter advising that "[n]either party is requesting oral argument on the pending motions." Dkt. 31. The Court deemed the motions submitted as of that date.

## II. ANALYSIS

The parties' cross-motions for summary judgment present the following question: was County Council's denial of Ord. 20-07, which proposed to amend the Property's designation under the Land Use Map from a Low Density Area to a Developing Area, arbitrary and capricious? To answer that question, the Court must

---

[3] Petitioner moved for summary judgment and filed an Opening Brief in Support of Its Motion for Summary Judgment on June 30, 2023. Dkt. 17 [hereinafter POB]. On August 16, County Council cross-moved for summary judgment and filed an Answering Brief to Reed Farms' Motion for Summary Judgment, and Opening Brief in Support of Sussex County Council's Cross Motion for Summary Judgment. Dkt. 20 [hereinafter RAB]. On September 22, Petitioner filed an Answering Brief in Opposition to Respondent's Cross-Motion for Summary Judgment and Reply Brief in Further Support of Petitioner's Motion for Summary Judgment. Dkt. 22 [hereinafter PRB]. On October 19, County Council filed a Reply Brief in Support of Sussex County Council's Cross-Motion for Summary Judgment. Dkt. 23 [hereinafter RRB].

look to Councilman Hudson's reasons for voting against Ord. 20-07. If those reasons were not supported by substantial evidence on the record, then Councilman Hudson's vote, as well as the votes of the two councilmembers who adopted his reasons, are invalid. If they were supported by substantial evidence on the record, then the vote stands.[4]

"The decision of a County Council on a rezoning ordinance is presumed to be valid unless it is clearly shown to be arbitrary and capricious." *Barley Mill, LLC v. Save Our Cty., Inc.*, 89 A.3d 51, 60 (Del. 2014). A party challenging the County Council's rezoning decision bears the "burden of rebutting the presumption of validity." *Tate v. Miles*, 503 A.2d 187, 191 (Del. 1986). The Court's role "in reviewing a zoning decision is limited" to "determin[ing] whether [Council's] acts are supported by a 'record of substantial evidence'" showing the decision was not "arbitrary or capricious," and the Court will not otherwise "second-guess the Council's decision or substitute its own judgment for that of the Council." *TD Rehoboth LLC v. Sussex Cty. Council*, 2017 WL 3528391, at *6 (Del. Ch. Aug. 11, 2017) (first quoting *Barley Mill, LLC*, 89 A.3d at 60, and then quoting *Save Our*

---

[4] In cross-moving for summary judgment, the parties have not "presented argument to the Court that there is an issue of fact material to the disposition of either motion"; accordingly, the Court "deem[s] the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions." Ct. Ch. R. 56(h).

16

*Cty., Inc. v. New Castle Cty.*, 2013 WL 2664187, at *9 (Del. Ch. June 11, 2013), *aff'd sub nom.*, *Barley Mill, LLC*, 89 A.3d 51).

"[T]he Court must focus on the decision made by Council, as expressed by its members, when determining whether the bases for that decision can be discerned from the record and whether it was 'arbitrary and capricious.'" *Id.* Although the County Council "need not follow a particular roadmap when reciting the grounds for its decision," it must "state[] its reasons with sufficient clarity that the court is not left to guess why the decision was made and is able to make the requisite determination that the decision was not the product of arbitrary or capricious reasoning." *Id.* at *7 (citing *New Castle Cty. Council v. BC Dev. Assocs.*, 567 A.2d 1271, 1276–77 (Del. 1989)). "[I]t is not enough that the [Council's] decision appears reasonable or that there was evidence to support those who decided to vote in favor of the [decision]." *O'Neill v. Town of Middletown*, 2006 WL 2041279, at *4 (Del. Ch. July 10, 2006) (quoting *Country Pres. Ass'n of Kent Cty. v. Kent Cty. Levy Ct.*, 1991 WL 153063, at *1 (Del. Ch. July 26, 1991)). "The record must establish the basis for the [Council's] decision." *Id.*

**A.    County Council's Denial Of Ord. 20-07 Was Arbitrary And Capricious.**

A zoning decision is arbitrary and capricious if it was "not taken in accordance with the law,"[5] was the product of "an unreasoned, irrational or unfair process,"[6] or was "'taken without consideration of and in disregard of the facts and circumstances of the case.'"[7]

Petitioner argues that County Council's denial of Ord. 20-07 was made in disregard of the facts and circumstances of the case.[8] *See* POB at 18.  Although Ord. 20-07 sought to change the Property's zoning designation from a Low Density Area to a *Developing* Area, Councilman Hudson explained only why the Property should not be designated as an *Industrial* Area.  Because Councilman Hudson's reasons for voting against the ordinance answered the wrong question, his vote was arbitrary and capricious.

A review of Councilman Hudson's statements on the record confirms the merit of Petitioner's position.  In describing the reasons for his vote, Councilman

---

[5] *Barley Mill, LLC*, 89 A.3d at 61.

[6] *Save Our Cty., Inc.*, 2013 WL 2664187, at *9.

[7] *TD Rehoboth LLC*, 2017 WL 3528391, at *6 (quoting *Save Our Cty., Inc.*, 2013 WL 2664187, at *9).

[8] Petitioner also argues that County Council's decision was arbitrary and capricious because the Property meets the requirements for a change in designation to "Developing Area," and County Council improperly ignored the Zoning Commission's recommendation to approve Ord. 20-07.  POB at 22–26.

18

Hudson first accurately stated that the Property is designated a Low Density Area, which, under the Plan, must be "used for agricultural activities and homes with business uses addressing those agricultural and residential needs." Appendix, Ex. C at 4:19–22. But he then explained why the Property should not be designated an *Industrial* Area. Quoting the Plan's description of permitted uses in an Industrial Area, he explained that property in such an area "should be devoted to larger industrial uses including heavier industry, light industry, warehousing, and flex space." *Id.*, Ex. C at 4:25–5:2. He also explained that, although "property to the south of th[e] [Property] is designated as Industrial Area[,] . . . everything around that relatively small parcel is designated as being in a Low Density Area." *Id.*, Ex. C at 4:11–16. Councilman Hudson concluded that an amendment from "the least-intensive area designation"—a Low Density Area—"to the most-intensive area designation"—an Industrial Area—would "undermine[] any predictability" of the Plan and the Land Use Map. *Id.*, Ex. C at 5:8–13.

Despite explaining why the Property should not be designated an Industrial Area under the Land Use Map's criteria, Councilman Hudson offered no reasons for denying the requested designation of *Developing* Area—a lower-intensive area designation where uses include "single family homes, townhouses, and multi-family units" as well as "business and industrial parks" in areas "with good road access and few nearby homes." Plan § 4.4.2.1. Because Councilman Hudson failed to provide

any reasons for denying the area designation sought in the ordinance, the Court can reach no other conclusion but that his vote was taken in disregard of the facts and circumstances of the case, and therefore arbitrary and capricious. *Cf. Gibson v. Sussex Cty. Council*, 877 A.2d 54, 66 (Del. Ch. 2005) (finding "[t]he numerous reasons offered by the Sussex County Council to justify their denial of . . . [an] application [we]re not supported by a sufficient record" when compared against requirements in the Sussex County Code).

To defend Councilman Hudson's reasoning, County Council points out that Petitioner's "end goal" was to "rezone the Property from the least intensive district, Agricultural Residential (AR-1), to the most intensive industrial district, Heavy Industrial (HI-1)." RAB at 22–23. County Council argues that, "because both a 'Developing Area' and an 'Industrial Area' allow for the same industrial zoning districts and [Petitioner] clearly and consistently expressed its intent to industrialize the Property, Council's reasons for denying Ordinance 20-07 are sound." *Id.* at 24.

County Council's argument conflates two separate issues it was asked to address. In considering Ord. 20-07, County Council was asked to change the Property's designation from a Low Density Area to a Developing Area. In considering C/Z 1923, County Council was asked to rezone the Property for Heavy

Industrial use. County Council considered and voted on the ordinances separately.[9] Its basis for denying the rezoning request presented in C/Z 1923 does not support or explain its separate denial of Ord. 20-07.

Moreover, because "the record does not answer why" a Developing Area designation is inappropriate, the Court is left "to speculate" whether the same reasons for rejecting an Industrial Area designation also apply to a Developing Area designation. *TD Rehoboth LLC*, 2017 WL 3528391, at \*8. Because the Court is "unable to discern from the record whether [Councilman Hudson's] decision would [have] been the same had he" considered the correct area designation, counsel's *post hoc* justification for his vote cannot stand. *Id.* at \*10; *see also id.* at \*8 (finding County Council's zoning decision was arbitrary and capricious where a councilman failed to state the reasons for his decision on the record); *see New Castle Cty. Council*, 567 A.2d at 1276 ("Council's reasons must be clear from the record.").

To summarize, because Councilman Hudson's vote against Ord. 20-07 was based on reasons for denying an Industrial Area designation the ordinance did not seek, his vote—and the votes of the two other councilmembers who adopted his reasoning—were made in disregard of the facts and circumstances of the case, and were therefore arbitrary and capricious.

---

[9] *See* 9 *Del. C.* § 7002(m) ("[n]o ordinance . . . shall contain more than 1 subject which shall be clearly expressed in its title").

21

**B. Ord. 20-07 Must Be Resubmitted To County Council For Another Vote.**

Because City Council's rejection of Ord. 20-07 was arbitrary and capricious, it cannot stand. The parties, however, dispute whether the ordinance should be remanded to County Council for another vote.

According to Petitioner, "[i]n situations where Council 'has taken its best shot at justification and essentially missed the mark,' the appropriate remedy is 'an injunction compelling' approval of the denied application." PRB at 23–24 (quoting *Gibson*, 877 A.2d at 80). Contrary to Petitioner's arguments, the record here does not suggest that County Council "t[ook] its best shot" at justifying a denial of a Developing Area designation but "missed the mark." *Gibson*, 877 A.2d at 80. Rather, when County Council voted on Ord. 20-07, it answered the wrong question. The appropriate remedy under the circumstances of this case is to resubmit the ordinance to County Council for a new public hearing and another vote that addresses the right question. *See TD Rehoboth LLC*, 2017 WL 3528391, at *1 (requiring resubmission of a rezoning application for a new public hearing and a new vote); *Gibson*, 877 A.2d 54 at 79–80 ("[T]he remand option has been used where the County Council provided no reasons for denial, making judicial review of their decision impossible.").

## III. CONCLUSION

As set forth above, the Court finds that County Council's denial of Ord. 20-07 was arbitrary and capricious and cannot stand. Petitioner's motion for summary judgment is GRANTED and County Council's motion for summary judgment is DENIED. The ordinance must be resubmitted to County Council for a new public hearing and a new vote. The parties are directed to meet and confer and submit an implementing order.

23